MORRIS, SUPT. OF INSURANCE, *v.* INVESTMENT
LIFE INS. CO., APPELLEE; SILVAS ET AL., APPELLANTS.

(No. 69-754—Decided June 30, 1971.)

28

Messrs. *George, Greek, King, McMahon & McConnaughey,* and *Mr. Darold I. Greek,* and *Mr. David A. Johnston,* and *Mr. Kiehner Johnson,* for appellee Investment Life Insurance Co. of America.

Messrs. *Knepper, White, Richards & Miller,* and *Mr. William E. Knepper,* and *Mr. William L. Clark,* for appellants.

*Per Curiam.* The appellants contend that the contract of January 9, 1963, was void *ab initio* because the parties failed to obtain the prior approval of the merger commission provided for in R. C. 3907.11.

R. C. 3907.10 provides, in pertinent part:

"* * * When any domestic stock company referred to in Section 3907.09 of the Revised Code proposes to merge or consolidate with any other company, it shall present its petition to the Superintendent of Insurance, setting forth the terms of the proposed merger or consolidation and praying for its approval. The superintendent thereupon shall issue an order of notice requiring that notice of the pendency of such petition and the time and place at which it will be heard be given to the shareholders, of the company filing the petition, by such means and at such times as are required for the giving of the notice of a meeting of shareholders under Section 1701.41 of the Revised Code."

R. C. 3907.11 provides that:

"The Governor or, if he cannot act, some competent resident of the state to be appointed by him, the Attorney General, and the Superintendent of Insurance shall constitute a commission to hear and determine any petition presented under Section 3907.10 of the Revised Code. At the time and place fixed in the notice given by the superintendent, or at such time and place as is fixed by adjournment, the commission shall proceed with the hearing, and may make such examination into the affairs and condition of the company as it considers proper. The superintendent may summon and compel the attendance and testimony of witnesses and the production of books and papers before the commission. Any policyholder or stockholder of the company may appear and be heard in reference to such petition.

"If satisfied that the interests of the policyholders of such company are properly protected, and that no reasonable objection exists thereto, the commission may approve and authorize the proposed merger or consolidation. Such merger or consolidation shall only be approved by the consent of all the members of the commission, whose duty it is to guard the interests of the policyholders of any such company proposing to merge or consolidate."

If the contract at bar is not one for consolidation or merger, the above sections do not pertain to this cause.

The instrument was titled "Reinsurance Agreement," but the title parties select for their contract is not conclusive evidence of what that agreement may actually be in practical operation. It is the provisions of the contract, construed together, that are of main importance. *Ohio Valley Advertising Corp.* v. *Linzell* (1957), 107 Ohio App. 351, 152 N. E. 2d 380, 382; *Farris* v. *Glen Alden Corp.* (1958), 393 Pa. 427, 143 A. 2d 25; *Stephenson Finance Co.* v. *South Carolina Tax Commission* (1963), 242 S. C. 98, 130 S. E. 2d 72, 76, citing *Fidanque* v. *American Maracaibo Co.* (1952), 33 Del. Ch. 262, 92 A. 2d 311; *Rath* v. *Rath Packing Co.* (1965), 257 Iowa 1277, 136 N. W. 2d 410; 19 Corpus Juris Secundum 1367, Section 1604.

It is settled law that a merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity. *State, ex rel. Safeguard Ins. Co.,* v. *Vorys* (1960), 171 Ohio St. 109, 167 N. E. 2d 910; *Rath* v. *Rath Packing Co., supra; Alabama Power Co.* v. *McNinch* (1938), 68 App. D. C. 132, 94 F. 2d 601; *Ahles Realty Corp.* v. *Commr. of Internal Revenue* (1934), 71 F. 2d 150, cert. den. 293 U. S. 611, 79 L. Ed. 701, 55 S. Ct. 141; *Appelstein* v. *United Board and Carton Corp.* (1960), 60 N. J. Sup. 333, 159 A. 2d 146, affd., 33 N. J. 72, 161 A. 2d 474; Fletcher Cyc. Corp., Section 7041; 13 Ohio Jurisprudence 2d 266, Section 803; 18 American Jurisprudence 2d 874, Section 1492.

In the contract here in question, there was proposed: (1) a transfer of all of the assets of American to ILICA; (2) an assumption by ILICA of American's liabilities; (3) the dissolution of American; and (4) the continued existence of ILICA as the absorbing company. Every factor essential to a merger appears in this plan. It is of little consequence by what name the act is characterized, or by what steps the result is to be reached, or that one of the steps may take the shape of reinsurance or management. As noted by Judge Troop in his concurring opinion in the Court of Appeals:

"* * * Merger entails the consolidation of both assets and liabilities. In the instant case, ILICA took over the assets of ALIA and it matters not that an interim device was incorporated in the contract by which the Ohio Superintendent of Insurance took over the management of assets and the gradual retirement, or reissuance, of policy liabilities, the ultimate purpose of the contract was merger. * * *

"* * * *

"It must not be overlooked that the agreement puts title to the assets in ILICA 'as the absolute owner thereof,' and requires that notice be mailed to each ALIA policyholder 'whose policy is assumed by ILICA.' The contract is a contract of merger. In the light of statutory language, there is no such thing as a 'hybrid' contract. It is either one or the other, but here it is clearly a merger contract." *Morris* v. *Investment Life Ins. Co.*, 18 Ohio App. 2d 211, 232.

Appellants contend that since this is a merger contract, the approval of the merger commission should have been sought and obtained at the outset, and that the failure to do so now voids this contract *ab initio*. Appellants view the words "proposes to merge," in R. C. 3907.10, as applicable only to a very early time in the life of the agreement.

We find the case of *Sachs* v. *Ohio Nat. Life Ins. Co.* (1940), 116 F. 2d 113, of little help in this matter. In addition to the fact that the equities there are easily distinguishable from those of the instant case, there is no evidence here, as there was in *Sachs*, of a longstanding administrative practice of disregarding the formal procedural requirements in the statute there in question.

However, an examination of statutes in other jurisdictions is most helpful in interpreting the word "proposed" as it is employed in R. C. 3907.10.

As to the precise point in time at which state approval must be obtained in the chronology of merger procedures, the laws of some states are not specific. A typical statute

merely provides that an insurer may merge "with the prior approval" of the commissioner. Conn. Cen. Stat. Ann. S 38-42 (Supp. 1963). The laws of other states generally provide that no merger shall be effectuated unless "in advance" thereof the merger plan and agreement have been filed with and approved by the designated state authority, without expressly indicating when the plan or agreement has to be submitted for state scrutiny.[1]

In at least six states, however, the statutes specifically require that the approval of the state must be obtained before the merger agreement entered into by the board of directors is submitted to the policyholders and/or the stockholders.[2]

Other states expressly provide that the merger agreement made by the board of directors must first be adopted by the policyholders and stockholders before submission to the state authority for approval.[3]

---

[1] "* * * the plan of merger or consolidation must be submitted to and approved by the commissioner in advance of the merger or consolidation." Utah Code Ann. §31-28-1.

"* * * No [such] merger or consolidation shall be effectuated unless in advance thereof the plan and agreement therefor have been filed with and approved in writing by the director of insurance." Ariz. Rev. Stat. Ann., Title 20, §20-731(B).

"* * * No [such] merger or consolidation shall be effectuated unless in advance thereof the plan and agreement therefor have been filed with the commissioner and approved in writing by him after a hearing thereon." Fla. Stat., §§628-451.

See, also, Ark. Stat. Ann., §§66-4245, 66-4246; Ga. Code Ann., §56-1535; Hawaii Rev. Stat., 431-651; Idaho Code Ann., §§41-2856, 41-2857; Ky. Rev. Stat. Ann., §304.952; Mont. Rev. Codes Ann., §§40-4745, 4746; W. Va. Code, §§33-5-25, 33-5-28.

[2] "Before any joint agreement for [such] merger or consolidation shall be submitted to the stockholders or members, it shall be submitted to and approved by the commission." Va. Code Ann. §38.1-81.

See, also, Alabama Code, Title 28, §5; Neb. Rev. Stat., §§44-224.03, 44-224.04, 44-224.07; Ore. Rev. Stat., §738.620; S. C. Code Ann., §37-764; and Wis. Stat. Ann., §202.03, §201.03 (10)(b) (town mutuals).

[3] "Upon the adoption [by the stockholders or members] of the agreement of merger or consolidation * * * such proposed agreement shall be * * * submitted to the superintendent for his approval." N. Y. Ins. Laws, §§485, 486.

In three states, Michigan, New Jersey and California, mergers are subject to two approvals: (a) a tentative approval, before the policyholders' and stockholders' consent to the merger agreement, and (b) a final approval after the policyholders or stockholders have so consented.

Finally, there is a group of states in which the Insurance Authority is empowered to direct or authorize changes or modifications in the merger agreement. It appears that subsequent reratification by the stockholders or policyholders must then be secured and the agreement resubmitted to the Authority.[5]

It is clear from the diverse nature of these statutes that many types of regulatory schemes are and were readily available as models for the enactment or amendment of our insurance laws.

The precise point in time at which state approval of a merger must be sought and obtained varies widely among our sister states. By comparison to these other statutes, R. C. 3907.10 clearly places Ohio in the group of states which are not specific in their merger approval time, and it is reasonable to conclude that the General Assembly intended it to be so. Thus, the failure of the instant parties to obtain the approval and authorization of the merger commission at the initial stage of their plan does not necessarily constitute noncompliance with the terms of this statute. As stated by the Court of Appeals, "* * * the logic of the situation impels us to conclude that such commission approval is not necessarily required at the beginning of the contract but is mandatory when the merger phase must be approved. For the commission provided by statutes to foresee all the trials, vicissitudes, and for-

See, also, Ill. Rev. Stat., Ch. 73, §§771, 774; Ind. Ann. Stat., Title 39, §3903; Kansas Gen. Stat. Ann., Ch. 40, §309; Md. Ann. Code, Art. 48A, §272; Mass. Ann. Laws, Ch. 175, §§19A, 19B; Pa. Stat. Ann., Title 40, §456.

[4]Mich. Stat. Ann., §24.17604; N. J. Stat. Ann., §17-27-5.3; Cal. Ins. Code, §§1080, 7041, 7042.

[5]Iowa Code Ann., Title 30, §521.8; Mo. Rev. Stat., 375.241; N. D. Cent. Code, Ch. 26, §20-04; S. D. Code, Ch. 31, §1204.

tunes of both merging companies for an indefinite future period encompassing the management phase would appear to be impossible. Consent and approval so given would be highly hazardous. But if approval be timed to the initiation of the second phase of the contract—the actual merger—then, the full scope of protection would be afforded. The immediate situation of the respective companies would be subject to more accurate prognosis at a time when the rights of the policyholders would be facing a critical change. Prior thereto, during the management phase, the fund being in the nature of a trust, those rights would be less subject to potential harm since the administration of the trust was subject to filing statements in two states and the operation subject to the continuing supervision of the Ohio Superintendent of Insurance." *Morris* v. *Investment Life Ins. Co., supra* (18 Ohio App. 2d 211), 221.

In the instant agreement, title to the assets of ALIA was to pass to ILICA at the outset. As the Court of Appeals correctly noted, however, the assets themselves "* * * are to be kept in a separate fund [The American Fund] not subject to any debts or liabilities of ILICA, and ILICA's sole interest in the fund * * * [lay] in the management fees therein provided together with such individual policies as * * * [might] be voluntarily transferred * * * [to it] by specific policyholders." *Morris* v. *Investment Life Ins. Co., supra* (18 Ohio App. 2d 211), 219.

Further, ILICA was said to be holding the American Fund "as trustee for management purposes for the benefit of ALIA policyholders." *Morris* v. *Insurance Co., supra,* page 225, and that the trusteeship "is not an asset of ILICA." *Ibid.,* page 228.

As to the assumption of liabilities, the court below also correctly noted that "True, there is an assumption clause which makes ILICA liable under all ALIA policies from the start; but during the period [until commingling] such an assumption is most remote in application, since the full American Fund is the source for initial payment."

*Morris* v. *Insurance Co., supra,* page 219, and "* * * Mr. Gruner, senior examiner for the department of insurance, testified as to the funding of liability for this assumption, stating, 'But it would appear to me as long as the funds, actuarial liabilities under their outstanding policies are adequate, and are protected by the assets of the fund, that no liability has gone over.' In short * * * the primary liability of the American Fund for payment of policies to ALIA policyholders was such as to make the assumption or reinsurance clause theoretical * * * [until the] assets would be commingled." *Ibid.,* page 222.

The very essence of merger is the transfer of assets and the assumption of liabilities. Neither is yet present here in fact and the approval of the merger commission must still be sought by the parties. Approval by that commission is mandatory before any commingling of assets or assumption of liabilities can take place.

Insofar as the Court of Appeals has upheld the present validity of this agreement, its decision is affirmed. However, any construction of that court's judgment which represents a judicial evaluation of the soundness of what these parties contemplate should be abjured as premature.

*Judgment accordingly.*

O'Neill, C. J., Herbert, Duncan, Corrigan, Stern and Guernsey, JJ., concur.

Guernsey, J., of the Third Appellate District, sitting for Leach, J.

Schneider, J., concurring in part. Appellants are stockholders of *American,* which is not a *domestic* stock company as contemplated by R. C. 3907.09 *et seq.* It is ILICA which is subject to these Ohio statutes and they are designed for the protection of ILICA's shareholders and policyholders, not those of American.

Therefore, I fail to see the foundation, upon the ap-

plication of these appellants, for an adjudication of the application of the statutes to the Reinsurance Contract.

I would affirm the judgment of the Court of Appeals to the extent that no fraud was found.