[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 666.]

ASA ARCHITECTS, INC., APPELLEE AND CROSS-APPELLANT, *v.* SCHLEGEL, APPELLANT AND CROSS-APPELLEE.

[Cite as *ASA Architects, Inc. v. Schlegel*, 1996-Ohio-427.]

*Corporations—Surviving corporation in a merger is liable for all obligations of a constituent corporation—R.C. 1701.82(A)(3) and (4), construed and applied.*

—————————

A surviving corporation in a merger is liable for all obligations of a constituent corporation. Therefore, a properly executed mandatory stock purchase agreement entered into between a closely held constituent corporation and shareholders of the company is binding upon the surviving corporation in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist. (R.C. 1701.82[A][3] and [4], construed and applied.)

—————————

(No. 95-321—Submitted April 16, 1996—Decided July 3, 1996.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 94APE05-765.

—————————

{¶ 1} On May 25, 1982, a stock purchase agreement was entered into between Acock, White & Associates, Architects, Inc., a closely held corporation, and employees-shareholders of the company, George W. Acock, W. Philip White, and appellant and cross-appellee, Wayne L. Schlegel. The stock purchase agreement was established to provide for the disposition of the shares of stock held by these individuals. Specifically, paragraph two of the agreement provided that, "[i]n the event of the termination of employment of any of the shareholders by

death, resignation or termination for whatever cause, the stockholder shall sell and the Company shall purchase all of the common stock of the Company owned by the employee for the price and on the terms hereinafter set forth." This mandatory buy-sell arrangement was also incorporated into an employment contract that was entered into between Schlegel and the firm.[1]

{¶ 2} On September 1, 1982, White resigned from the company. The corporation's name was then changed to Acock Schlegel Architects, Inc. White's shares of stock were purchased by the company for $184,072.01 and the shares were distributed to Schlegel and Acock as a stock dividend. As a result of the distribution, Acock held two hundred eighty shares (fifty-six percent) and Schlegel held two hundred twenty shares (forty-four percent) of the company stock.

{¶ 3} In December 1988, Acock and Schlegel decided to form a new corporation and merge the existing company into the newly created corporation. The new corporation, Acock, Schlegel, Inc., was formed on December 28, 1988. The new company was structured as an "S" corporation for federal income tax purposes. The underlying basis of the proposed merger was to obtain a more favorable tax status for the business.

{¶ 4} On December 28, 1988, Acock and Schlegel, as directors and shareholders of Acock Schlegel Architects, Inc., approved the plan to merge the two companies. Also on this date, Acock and Schlegel, as directors of the newly created company (Acock, Schlegel, Inc.), elected Acock president and Schlegel secretary/treasurer of the new corporation, approved the proposed plan of merger

---

1. Schlegel entered into an employment contract with the company on the same date as the execution of the stock purchase agreement, May 25, 1982. Section 6.02 of the employment contract provides:
    "*Stock Purchase*. In the event of the termination of employment by death, resignation or termination with or without cause, the employee shall sell and the employer shall purchase the stock of employer owned by employee in accordance with the stock purchase agreement between the parties."

of the two companies, and agreed that the new corporation would assume "all contractual and other obligations" of the former company.

**{¶ 5}** Subsequently, on December 30, 1988, the two corporations executed a document entitled "Agreement and Certificate of Merger." This document, which was signed by Acock and Schlegel as president and secretary of the two corporations, respectively, provided that:

"3. Acock Schlegel Architects, Inc. shall be merged into Acock, Schlegel, Inc. which shall be the surviving corporation. The name of the surviving corporation shall be changed to Acock Schlegel Architects, Inc.

"4. The terms of the merger are as follows: Each shareholder of Acock Schlegel Architects, Inc. shall surrender his stock certificates and there shall be issued to each shareholder a new certificate for the same number of shares in the surviving corporation.

"5. Article One of the Articles of Incorporation of the surviving corporation is amended as follows:

"'First. The name of the corporation shall be Acock Schlegel Architects, Inc.'

"6. The effective date of the merger is December 31, 1988.

"7. Upon the effective date of the merger, the corporation with charter number 387360 shall cease to exist and all its property, assets, rights, privileges, immunities, powers, franchises, and authority shall vest in the surviving corporation without further act or deed, and the surviving corporation shall be liable for *all the obligations* of said corporation." (Emphasis added.)

**{¶ 6}** Accordingly, Acock Schlegel Architects, Inc. was merged into the newly created corporation. As a result, Acock and Schlegel were each issued a stock certificate, evidencing their respective ownership interests in the surviving corporation. Additionally, both certificates contain a legend that states that the transfer of shares "is restricted by the terms of a stock purchase agreement dated

December 31, 1988 * * *." The record, however, does not contain a stock purchase agreement that was executed on that date.[2] The last stock purchase agreement that was signed by Acock and Schlegel was the May 25, 1982 agreement. The record indicates that following White's departure from the business, various new stock purchase arrangements were prepared by corporate counsel, Fred J. Milligan, Jr. However, Acock refused to sign a new agreement. Moreover, following the merger, Acock was again presented with a new stock purchase agreement. Acock did not sign this agreement, and the parties stipulated that it was Acock's position that "'if there's already an agreement in effect, then I don't need to sign anything new and if there isn't, I don't want to sign anything."

{¶ 7} In May 1992, Schlegel terminated his employment with appellee and cross-appellant, ASA Architects, Inc. ("ASA").[3] Thereafter, Schlegel sought to have his stock purchased by the company, which ultimately led to a dispute over the viability of the May 25, 1982 stock purchase agreement.

{¶ 8} On September 25, 1992, ASA filed a declaratory judgment action in the Court of Common Pleas of Franklin County. In the complaint, ASA sought a declaration that, as a result of the 1988 merger, the stock that had been the subject matter of the May 25, 1982 stock purchase agreement was no longer in existence, and that the agreement was not valid and enforceable with respect to the shares of stock currently owned by Schlegel. Thus, ASA requested that the court find that it was not legally obligated to purchase Schlegel's stock.

{¶ 9} Schlegel answered the complaint, filed a counterclaim against ASA, and asserted a claim against Acock. Schlegel sought a determination that ASA was

---

2. On December 31, 1988, Schlegel and Acock executed a document entitled "Stockholder Agreement." The record indicates that this agreement, as originally drafted, contained a paragraph that reaffirmed and readopted the May 25, 1982 stock purchase agreement. However, the final document did not provide for the disposition of Schlegel's or Acock's shares of stock.

3. Prior to the commencement of the proceedings, Acock Schlegel Architects, Inc. apparently changed its name to ASA Architects, Inc.

bound by the May 25, 1982 stock purchase agreement and that the company was obligated to purchase his two hundred twenty shares of stock. Additionally, Schlegel alleged that Acock was personally liable to Schlegel for obligations owed by ASA.

{¶ 10} The case was submitted to the trial court on cross-motions for summary judgment, and the matter was referred to a referee. On March 10, 1994, the referee issued his report, recommending that the trial court grant summary judgment in favor of Schlegel. The referee concluded that the stock purchase agreement survived the merger and, therefore, ASA, as the surviving corporation, was obligated to purchase the shares of stock held by Schlegel.

{¶ 11} ASA and Acock filed objections to the referee's report. The trial court overruled ASA's and Acock's objections, adopted the findings of the referee, and entered judgment in favor of Schlegel. ASA and Acock then appealed to the Court of Appeals for Franklin County.

{¶ 12} The court of appeals reversed the judgment of the trial court and remanded the cause for further proceedings, finding that summary judgment should not have been granted in favor of Schlegel. The court of appeals held that "[i]ssues of fact remain, specifically, whether or not the parties intended for the 1982 stock purchase agreement to extend and apply to the shares owned by [Schlegel] in the New Corporation." In reaching this conclusion, the court of appeals reviewed various documents executed in conjunction with the merger and also focused on the fact that around the time of the merger, Acock declined to sign a new stock purchase agreement. In addition, the court of appeals also held that Acock was not personally liable to Schlegel for any obligations owed by ASA.

{¶ 13} This cause is now before this court upon the allowance of a discretionary appeal by Schlegel and cross-appeal by ASA.

———————————

*Schottenstein*, *Zox & Dunn*, *Kevin R. McDermott* and *Edwin L. Skeens*, for appellee and cross-appellant.

*Vorys*, *Sater*, *Seymour & Pease*, *David S. Cupps* and *Philip A. Brown*, for appellant and cross-appellee.

_____

**DOUGLAS, J.**

**{¶ 14}** The sole issue before this court is whether ASA is obligated by virtue of the May 25, 1982 stock purchase agreement to purchase the two hundred twenty shares of stock owned by Schlegel. The 1982 agreement does not specify what would happen to the agreement in the event of the company's merger with another corporation. Moreover, a new stock purchase agreement was not executed by the parties following the merger.

**{¶ 15}** The court of appeals, citing *Searl v. Cozad* (App. 1935), 19 Ohio Law Abs. 275, held, and ASA agrees, that the continued viability of the 1982 stock purchase agreement hinged on the intent of the parties, and, in this regard, genuine issues of material fact precluded summary disposition of the case. Additionally, ASA, in its cross-appeal, further argues, alternatively, that any responsibility it may have had to Schlegel under the 1982 agreement was discharged, as a matter of law, at the time of the merger. ASA asserts that the stock that was the basis for the agreement ceased to exist after the merger, thereby rendering performance of the agreement an impossibility. We disagree.

**{¶ 16}** In *Searl*, *supra*, the defendant entered into an installment contract with the plaintiff and agreed to purchase all the shares of common stock owned by the plaintiff in a company. The defendant was the president/manager of the company. Following the execution of the contract, the defendant raised his own salary by $400 a month -- the exact amount he agreed to pay the plaintiff each month pursuant to the installment contract. The defendant complied with the terms of the agreement for a few years and, after becoming the majority shareholder, he

stopped making payments on installments that were due. Thereafter, the company was dissolved voluntarily by the parties, and the plaintiff sued the defendant to recover certain amounts owed. The trial court held that the plaintiff was entitled to $3,375, but that she could not recover any installment that became due after the company was dissolved. On appeal, the court of appeals modified the judgment of the trial court, finding that the plaintiff was entitled to an additional sum of $400.

{¶ 17} In *Searl*, the defendant asserted that he should be excused from obligations owing under the installment contract because, as a result of the dissolution, the stock that was the subject matter of the contract no longer existed and that the contract therefore could not be performed. In considering the defendant's arguments, the court of appeals noted that "where such a situation is claimed, the question to be determined by the court is whether it was the intention of the parties that one of them should be absolutely bound." *Id.* at 277. The court of appeals noted further that in the absence of an express provision in a contract contemplating such a situation, the law implies "an intention that impossibility of performance, arising from the destruction of the thing which is the subject of the contract, should excuse the performance of the contract." *Id.* Notwithstanding these findings, the court of appeals then determined that the proper focus in the case was whether the destruction of the subject matter of the contract was the fault of the promisor. The court of appeals determined essentially that the defendant failed to prove that he was not responsible for the dissolution of the company and the ultimate termination of the subject matter of the contract.

{¶ 18} Clearly, the court of appeals' and ASA's reliance on *Searl*, *supra*, is misplaced. There are numerous distinctions that exist between *Searl* and the case before this court. The most glaring contrast is the fact that *Searl* involved the voluntary dissolution of a corporation. In this case, we are confronted with an entirely different situation. Here, we are concerned with the effect of a merger. "It is settled law that a merger involves the absorption of one company by another, the

latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *Morris v. Investment Life Ins. Co.* (1971), 27 Ohio St.2d 26, 31, 56 O.O.2d 14, 17, 272 N.E.2d 105, 108. See, also, 15 Fletcher, Cyclopedia of the Law of Private Corporations (1990) 124, Section 7082. Hence, it would be incorrect to maintain that the reasoning in *Searl*, which involved an entirely different matter, can be applied to the case now before us.[4]

{¶ 19} In Ohio, the initial step in the effectuation of a statutory merger is the approval of an agreement of merger by the directors of the constituent[5] corporation. R.C. 1701.78(D).[6] The agreement must, in certain situations, be adopted by the shareholders of both the constituent and surviving[7] corporations. *Id.* The vote of shareholders required to adopt an agreement of merger is set forth in R.C. 1701.78(F). Thereafter, a certificate of merger must be filed with the Secretary of State. R.C. 1701.81. R.C. 1701.82 sets forth what effect a merger or

---

4. Having determined that *Searl v. Cozad* (1935), 19 Ohio Law Abs. 275, is factually inapposite to this case, we need not consider whether the court of appeals in *Searl* set forth an accurate portrayal of the law as it stands today with respect to the effects of a voluntary dissolution of a corporation.

5. R.C. 1701.01(V) provides:

"'Constituent corporation' means an existing corporation merging into or into which is being merged one or more other entities in a merger or an existing corporation being consolidated with one or more other entities into a new entity in a consolidation, whether any of the entities are domestic or foreign, and 'constituent entity' means any entity merging into or into which is being merged one or more other entities in a merger, or an existing entity being consolidated with one or more other entities into a new entity in a consolidation, whether any of the entities are domestic or foreign."

6. The relevant portions of R.C. Chapter 1701 referred to herein have not changed substantially since the date of the merger.

7. R.C. 1701.01(W) provides:

"'Surviving corporation' means the constituent domestic or foreign corporation that is specified as the corporation into which one or more other constituent entities are to be or have been merged, and 'surviving entity' means the constituent domestic or foreign entity that is specified as the entity into which one or more other constituent entities are to be or have been merged."

In the case at bar, any reference to constituent corporation concerns the company that was absorbed and extinguished by virtue of the 1988 merger. ASA is, of course, the surviving company.

consolidation has on the constituent and surviving corporations. Specifically, R.C. 1701.82 provides, in part, that:

"(A) When a merger or consolidation becomes effective, all the following apply:

"(1) The separate existence of each constituent entity other than the surviving entity in a merger shall cease, except that whenever a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights in the surviving or new entity, the officers, general partners, or other authorized representatives of the respective constituent entities shall execute, acknowledge, and deliver such instruments and do such acts. * * *

"* * *

"(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, *and all obligations belonging to or due each constituent entity*, all of which are vested in the surviving or new entity without further act or deed. * * *

"(4) The surviving or new entity is liable *for all the obligations of each constituent entity*, including liability to dissenting shareholders. Any claim existing or any action or proceeding pending by or against any constituent entity may be prosecuted to judgment, with right of appeal, as if the merger or consolidation had not taken place, or the surviving or new entity may be substituted in its place.

"(5) All the rights of creditors of each constituent entity are preserved unimpaired, and all liens upon the property of any constituent entity are preserved unimpaired * * *." (Emphasis added.)

{¶ 20} The parties contend that the merger in the case at bar was perfected in compliance with Ohio's statutory merger scheme. ASA, however, relying essentially on Delaware case law, suggests that the term "obligations," as used in

R.C. 1701.82(A)(3) and (4), involves only those obligations of a constituent corporation that are "external" in nature, such as debts owed to third-party creditors, and not "internal" obligations that are agreed to between a constituent corporation and employees/shareholders of the company. Again, we disagree.

{¶ 21} In this regard, we find ASA's argument somewhat puzzling. ASA does not dispute, and, in fact, agrees that the employment contract entered into between the constituent corporation and Schlegel was acquired by ASA in the course of the merger.[8] Obviously, if a stock purchase agreement is an "internal" obligation of a constituent corporation, as argued by ASA, then an employment contract entered into between an employee and a company would necessarily fall within this same classification.

{¶ 22} In any event, it is obvious that ASA is attempting to add language to R.C. 1701.82(A)(3) and (4) that simply does not exist. R.C. 1701.82(A)(3) and (4) do not delineate between the types of obligations owed by a constituent corporation and those obligations that are inherited as a matter of law by the surviving corporation. Hence, as the General Assembly has shown no intent to create a dichotomy between certain types of obligations that flow from a constituent corporation to the surviving company in a merger, this court will certainly not presume to create one. In our opinion, the General Assembly has made its policy perfectly clear with respect to the effects of a merger. The surviving corporation in

---

8. On September 23, 1993, the parties filed a "stipulation" with the trial court. Specifically, in paragraph thirty-one of the document, the parties agreed that "[s]ubsequent to the reorganization and merger, there were no changes requested or made with respect to:

"a.    the obligor[s] on the mortgage loan made to the Old Corporation by State Savings Bank to finance a building the Old Corporation purchased;

"b.    the obligee on notes receivable held by the Old Corporation in respect of loans or advances to employees or shareholders;

"c.    the corporate party to employment agreements between the Old Corporation and Messrs. Acock and Schlegel; and

"d.    the corporate beneficiary on the two life insurance policies which are Deposition Exhibits 26 and 27."

a merger is responsible for *all obligations* of the constituent corporation. R.C. 1701.82(A)(3) and (4).

{¶ 23} There is no question that a stock purchase agreement represents a valid contract which is entitled to enforcement in a court of law. See, generally, *Endres Floral Co. v. Endres* (1995), 72 Ohio St.3d 526, 651 N.E.2d 950. "In the case of a merger of one corporation into another, where one of the corporations ceases to exist and the other corporation continues in existence, the latter corporation is liable for the debts, *contracts* and torts of the former * * * and this liability is often imposed by statute." (Emphasis added.) 15 Fletcher, *supra* at 226, Section 7121. Indeed, a mandatory stock purchase agreement can confer reciprocal obligations upon the parties to the contract.

{¶ 24} Accordingly, we find that a surviving corporation in a merger is liable for all obligations of a constituent corporation. Therefore, a properly executed mandatory stock purchase agreement entered into between a closely held constituent corporation and shareholders of the company is binding upon the surviving corporation in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist.

{¶ 25} In this case, the May 25, 1982 stock purchase agreement entered into between Schlegel and the constituent corporation created reciprocal obligations between the parties. Pursuant to the terms of the agreement, the constituent corporation promised to purchase Schlegel's shares and Schlegel promised to tender his shares of stock to the company upon certain triggering events. The agreement did not address what would happen in the case of a merger. Further, ASA, in conjunction with the merger, expressly assumed full responsibility for all obligations owed by the constituent corporation. Moreover, following the merger, the parties did not enter into a new stock purchase agreement. Thus, we find that as a result of the merger the contractual obligations of the constituent corporation, including the stock purchase agreement, flowed, by operation of law, to ASA.

{¶ 26} For the foregoing reasons, we reverse the judgment of the court of appeals. ASA is obligated to purchase the shares of stock held by Schlegel. The judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

_____