ACORDIA OF OHIO, L.L.C., APPELLANT, *v.* FISHEL ET AL., APPELLEES.*

[Cite as *Acordia of Ohio, L.L.C. v. Fishel,*

133 Ohio St.3d 345, 2012-Ohio-2297.]

*Mergers—Transferability of contracts with employees not to compete—Judgment affirmed.*

(No. 2011-0163—Submitted November 15, 2011—Decided May 24, 2012.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-1000071, 2010-Ohio-6235.

_____

LANZINGER, J.

{¶ 1} In this appeal, we are asked to consider whether the ability to enforce an employee's noncompete agreement transfers by operation of law to the surviving company when the company that was the original party to the agreement merges with another company. We hold that in this case, the language of the agreement dictates that the surviving company cannot enforce the agreement after the merger as if it had stepped into the shoes of the original company.

## I. Facts

*A. Background*

{¶ 2} As a condition of their employment with the insurance-services company that eventually became known as Acordia of Ohio, Inc. ("Acordia, Inc."),[1] appellees Michael Fishel, Janice Freytag, Mark Taber, and Sheila Diefenbach (collectively, "the employees") entered into noncompete agreements

_____

* Reporter's Note: See opinion upon reconsideration that appears at 133 Ohio St.3d 356, 2012-Ohio-4648, 978 N.E.2d 814.

1. Initially known as Frederick Rauh & Company, Acordia, Inc. underwent a number of mergers, acquisitions, and reorganizations between 1993 and 2001. Appellant will be referred to as "the L.L.C."

by which they agreed to forgo competition with Acordia, Inc. for two years after termination of their employment there. Fishel's noncompetition agreement, for example, provides:

> In consideration of my employment and its continuation *by Frederick Rauh & Company (hereinafter, Company)* I hereby covenant as follows:
>
> A. For a period of two years following termination of employment with *the company* for any reason, I will not directly, indirectly, or through association with others solicit, write, accept or in any other manner perform any services relating to insurance business, insurance policies, or related insurance services for any of the following;
>
> (1) Any individual or entity for whom the company has written, accepted, or in any other manner performed any services relating to insurance business, insurance policies, or related insurance services at any time *while I was employed by the Company;*
>
> (2) Any individual or entity whose name was provided me as a prospective client at any time *while I was employed by the Company*.
>
> B. For a period of two years *following termination of employment with the company*, I will not encourage nay [sic] other employees of the company, directly, indirectly, or through association with others to leave *the Company's employment*.

(Emphasis added.) It is significant that this agreement of noncompetition does not contain language that extends to other employers, such as the company's

"successors or assigns." The other employees signed nearly identical noncompetition agreements, the only differences consisting of formatting changes, the substitution of company names, and the dates. All agreements at issue were signed between 1993 and 2000.

{¶ 3} Frederick Rauh & Company became known as Acordia of Cincinnati, Inc. after its acquisition by Acordia, Inc. in 1994. Fishel began his employment with Frederick Rauh in 1993. Freytag and Taber began employment with Acordia of Cincinnati, Inc. before it merged with other Ohio companies to become Acordia of Ohio, Inc. in 1997. Diefenbach signed her noncompete agreement with the successor company, Acordia, Inc., in July 2000.

{¶ 4} Wells Fargo acquired Acordia, Inc. in May 2001. As part of this acquisition, the employees were required to complete several standard forms, including an acquisition-employment application, a United States Department of Justice employment-eligibility-verification form, a background-investigation authorization form, and a new-hire team-member acknowledgment form.

{¶ 5} Seven months later, Acordia, Inc. underwent a merger with appellant, Acordia of Ohio, L.L.C. ("the L.L.C."). Following the merger, only appellant remained. The employees continued to work for the L.L.C. until August 2005, when they began employment with appellee Neace Lukens Insurance Agency, L.L.C. ("Neace Lukens"). They soon used their contacts to recruit multiple customer accounts from the L.L.C. to Neace Lukens. Within six months, 19 customers had transferred $1 million in revenue to Neace Lukens from the L.L.C.

*B. The Lawsuit*

{¶ 6} The L.L.C. filed suit for injunctive relief and money damages in September 2005 against the employees, Neace Lukens, Neace and Associates Insurance Agency of Ohio, Inc., and Joseph Lukens, all appellees. The complaint claimed that the employees had violated their two-year noncompete agreement

and would misappropriate the L.L.C.'s trade secrets. After reviewing the evidence presented at preliminary-injunction hearings, the trial court denied the L.L.C.'s motion for a preliminary injunction. The First District Court of Appeals affirmed the trial court's decision, holding in part that a preliminary injunction was unwarranted because Acordia, Inc. and the employees did not intend to make the noncompete agreements assignable to successors such as the L.L.C. *Acordia of Ohio, L.L.C. v. Fishel*, 1st Dist. No. C-060292 (May 9, 2007). The trial court granted the employees' motion for summary judgment, and the L.L.C. appealed, arguing in part that the noncompete agreements signed by the employees had transferred to the L.L.C.

{¶ 7} The court of appeals affirmed the trial court's decision to grant summary judgment in favor of the employees. *Acordia of Ohio, L.L.C. v. Fishel*, 1st Dist. No. C-100071, 2010-Ohio-6235. The court explained that while noncompete agreements transfer from the predecessor company to the successor company by operation of law after a merger, the employees' noncompete agreements pertained only to the specific companies with which they had originally been employed. *Id*. at ¶ 13-20. Because the previous iterations of Acordia, Inc. had been merged out of existence more than two years before the employees left the L.L.C., the court of appeals concluded that the agreements had expired when the employees left and that the L.L.C. had no right to enforce them. *Id*. at ¶ 17-18.

{¶ 8} The L.L.C. appealed, and we accepted its proposition of law that states, "Pursuant to Ohio's merger statutes, agreements between employees and employers that contain restrictive covenants are assets of the constituent company that transfer automatically by operation of law in a statutory merger from the constituent company to the surviving company and are enforceable by the surviving company according to the agreements' original terms as if the surviving company were a party to the original agreements." *Acordia of Ohio, L.L.C. v.*

4

*Fishel*, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522. We reject that proposition and affirm the judgment of the court of appeals.

## II. Legal Analysis

{¶ 9} The pivotal question is whether the noncompete agreements apply only to the original contracting employer or whether after the merger, the L.L.C. may enforce the noncompete agreements as if it had stepped into the shoes of those original contracting employers.

*A. The Contract Assets*

{¶ 10} R.C. 1701.82 provides that a company's assets transfer to the new company after a merger:

> (A) When a merger or consolidation becomes effective, all of the following apply:
>
> * * *
>
> (3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity * * *.

Because the statute specifies that the new company takes over all the previous company's assets and property after the merger, it is clear that employee contracts transfer to the resulting company. In this case, the employees' contracts came under the control of the L.L.C. after it merged with Acordia, Inc.

{¶ 11} Nevertheless, although the L.L.C. assumed control of the employees' contracts after the merger, we agree with the First District Court of Appeals that the L.L.C. may not enforce the noncompete agreements as if the L.L.C. had stepped into the shoes of the company that originally contracted with

the employees. Appellant's proposed outcome would require a rewriting of the agreements. By their terms, the noncompete agreements are between only the employees and the companies that hired them.

{¶ 12} We have previously explained that when a merger between two companies occurs, one of those companies ceases to exist: "[A] merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *Morris v. Invest. Life Ins. Co.*, 27 Ohio St.2d 26, 31, 272 N.E.2d 105 (1971). After the L.L.C. absorbed Acordia, Inc., the companies with which the employees agreed to avoid competition had ceased to exist. Because the noncompete agreements do not state that they can be assigned or will carry over to successors, the named parties intended the agreements to operate only between themselves— the employees and the specific employer. While the employment agreements transferred to the L.L.C. by operation of law pursuant to R.C. 1701.82, the wording within those agreements prevents the L.L.C. from enforcing a noncompetition period as if it were the original company with which the employees agreed not to compete. The L.L.C. acquired only the ability to prevent the employees from competing two years after their employment terminated with the specific company named in the agreements.

{¶ 13} We hold that noncompete agreements that are transferred as a matter of law by a merger between companies are enforceable according to their terms.

*B. Ohio merger law remains undisturbed*

{¶ 14} The L.L.C. argues that a decision in favor of the appellees-employees would disturb the principle of corporate continuity established in merger law that constituent companies continue after the merger as a unified company vested with the identical contracts of the merged companies. Our

decision, however, rests firmly within this framework. We emphasize that in accordance with R.C. 1701.82(A)(3), the surviving company possesses all assets and property and every interest in the assets and property of each constituent entity, including employment contracts and agreements.

{¶ 15} When contracts pass to the surviving company following merger, the surviving company obtains the same bargain agreed to by the preceding company, nothing more. Our decision today honors the noncompete agreement obtained by the employees' original employers. The L.L.C. argues that as the surviving company, it needs these agreements because they protect the goodwill and proprietary information obtained in the merger; however, extending these agreements would run counter to their plain language, which specifies that they apply only to "the Company" with which the employees agreed to avoid competing, not the company's successors. The L.L.C. could have protected its goodwill and proprietary information by requiring that the employees sign a new noncompete agreement as a condition of their continued at-will employment, similar to the way in which Wells Fargo required them to complete a number of employment forms as a condition of continued employment when it acquired Acordia, Inc.

{¶ 16} The L.L.C. also argues that we should follow the decisions of other jurisdictions. Our decision in this case, however, is premised upon our application of Ohio law to the particular agreement in this case. Our analysis of Ohio law and the noncompete agreements leads to the conclusion that although the employees' noncompete agreements transferred automatically by operation of law to the L.L.C. following the merger, the merger did not alter the language of the agreements, and the noncompete agreements provided only that the employees would avoid competition during the two years following their termination from "the company" as defined by their respective noncompete agreements.

*C. The employees did not violate the noncompete agreements*

{¶ 17} Because the noncompete agreements transferred to the L.L.C. upon completion of the merger, the L.L.C. obtained the right to enforce the agreements as written. In other words, the employees were unable to compete with the L.L.C. for the two years following their termination from the "company" with which they each had signed their respective noncompete agreements.

{¶ 18} In this case, the termination, or complete severance of the employer-employee relationship, occurred when the company with which the employee agreed not to compete ceased to exist, an event triggered by merger. The triggering event for Fishel, Freytag, and Taber occurred when Acordia of Cincinnati, Inc. merged with other Ohio companies to become Acordia of Ohio, Inc. in December 1997. Consequently, their noncompete periods expired in December 1999. The triggering event for Diefenbach occurred when Acordia of Ohio, Inc. merged with the L.L.C. in December 2001. Her noncompete period accordingly expired in December 2003. Because the employees' noncompete periods had all expired before their resignations from the L.L.C. and subsequent employment with Neace Lukens, the L.L.C. had no legal right to enforce the noncompete agreements against the employees.

### III. Conclusion

{¶ 19} The noncompete agreements between the employees and their original employers specified that they applied only to the specific companies that had originally hired each employee. Because the agreements made no provision for the continuation of the agreement upon any acquisition of the original company by another company, the agreements are not enforceable by the L.L.C. according to the agreements' original terms past the two-year noncompete period agreed to by the employees and their original employers. We accordingly hold that the trial court properly granted summary judgment in favor of the employees.

Judgment affirmed.

8

O'CONNOR, C.J., and MCGEE BROWN, J., concur.

PFEIFER, J., concurs in judgment only.

LUNDBERG STRATTON, O'DONNELL and CUPP, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 20} Respectfully, I dissent.

{¶ 21} A noncompete agreement existing between an employee and a constituent entity is an asset of that entity and, in a statutory merger, transfers by operation of law to the surviving entity and is enforceable by the surviving entity as if it were a signatory to the original agreement. As a result of a series of successive corporate mergers, Acordia of Ohio, L.L.C., acquired the noncompete agreements at issue in this case by operation of law, along with the ability to enforce them without regard to assignment.

{¶ 22} Accordingly, I would reverse the judgment of the court of appeals.

**The Lead Opinion**

{¶ 23} In my view, the lead decision does not conform with state statutes governing corporate mergers, and it departs from century-old precedent holding that a successor entity steps into the shoes of an acquired entity and any predecessor entities, and thereby acquires the right to enforce agreements in its capacity as a successor entity.

{¶ 24} In this case, the lead opinion concludes that Acordia of Ohio, L.L.C., cannot enforce the noncompete agreements it acquired by merger as if it had stepped into the shoes of the original corporate entities. The lead opinion interprets the silence in these agreements regarding assignability or successorship as evidence that the parties intended the agreements to operate only between the employee and the corporate employer that was a party to the agreement, and not any successor entities. While acknowledging that these agreements transferred by operation of law pursuant to R.C. 1701.82, the lead opinion concludes that "the

9

wording within those agreements" precludes Acordia of Ohio, L.L.C., from enforcing the agreements as if it were one of the original contracting parties. The lead opinion explains that the merger did not change the language of the agreements by expanding its scope to include surviving entities; thus, it concludes, Acordia of Ohio, L.L.C., can enforce the agreements only according to their terms, which enjoined each employee from competing for two years after his or her employment terminated with the specific corporate employer that was a party to the agreement. This analysis, I submit, is faulty.

### A Noncompete Agreement Is an Asset that
### Passes by Operation of Law

{¶ 25} R.C. 1701.82(A)(3) states, "The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority * * * of each constituent entity, and * * * all obligations belonging to or due to each constituent entity" without reversion or impairment. R.C. 1705.39, which pertains to mergers between corporations or partnerships and limited-liability companies, confers the same vestments on the surviving entity.

{¶ 26} It is true that R.C. 1701.82(A)(1) states that a constituent entity ceases to exist as a separate business in a merger, but that statute also provides several exceptions to this general rule, including when "a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights" in a surviving entity. In those instances, "the existence of the constituent entities and the authority of their respective officers, directors, general partners, or other authorized representatives is continued notwithstanding the merger or consolidation." *Id.; compare* R.C. 1705.39(A)(1) (contains similar exceptions).

{¶ 27} R.C. 1701.82 and 1705.39, by their operation, vest all the assets and obligations of a constituent entity in the surviving entity without reversion or

10

impairment. When we examined the effect of R.C. 1701.82 in the context of a stock purchase agreement entered into by a constituent entity, we held that a properly executed contract is binding on the surviving entity "in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St.3d 666, 665 N.E.2d 1083 (1996), syllabus. In that case, the agreement made no provision for what would happen in the event of a merger, the surviving entity in the merger assumed full responsibility for all obligations of the constituent entity, and the parties did not enter into a new agreement following the merger. *Id*. at 673. Based on those factors, we determined that the contractual obligations of the constituent entity flowed, *by operation of law*, to the surviving entity. *Id*. These same considerations are present here and compel a similar conclusion.

{¶ 28} The lead opinion correctly concludes that contract principles dictate that agreements must be enforced according to their terms; however, it ignores the fact that the entity entitled to enforce those agreements is determined by statute. *See* R.C. 1701.82 and 1705.39.

{¶ 29} More than 180 years ago, we recognized that contracts are subordinate to statutes, and the latter "may regulate them, prescribe their form, their effect, and the mode of their discharge, and every contract is supposed to be made with reference to those laws." *Smith v. Parsons*, 1 Ohio 236, 238-239 (1823). And almost 100 years ago, we construed railroad-consolidation statutes that contained language similar to that in R.C. 1701.82 and determined that in a merger, "the consolidated company merely steps into the shoes of the constituent companies." *Marfield v. Cincinnati, D. & T. Traction Co*., 111 Ohio St. 139, 161-164, 144 N.E. 689 (1924). The determination of the lead opinion that the terms of the agreements preclude Acordia of Ohio, L.L.C., from their enforcement runs counter to our century-old precedent.

**{¶ 30}** We applied this analysis more recently, rejecting the argument that a change in corporate structure invalidated noncompete agreements originally entered into by the constituent entity. *Rogers v. Runfola & Assocs., Inc.*, 57 Ohio St.3d 5, 7, 565 N.E.2d 540 (1991). There, the employees signed noncompete agreements while working for a sole proprietorship, which subsequently changed its business structure to that of a corporation, during their tenure of employment. *Id.* In determining that the noncompete agreements were valid and could be enforced by the newly incorporated business, which had acquired all the assets and liabilities of the sole proprietorship, we were guided in our analysis by the fact that "[o]nly the legal structure of the business changed, not the business itself," *id.*, and that the change in corporate structure did not place additional burdens on the "duties or the daily operations" of the employees. *Id.* This is the same circumstance that we confront in this case.

**{¶ 31}** Here, Acordia of Ohio, L.L.C., acquired the noncompete agreements from Wells Fargo, which in turn had acquired them through a series of corporate mergers. Those mergers, which began with Frederick Rauh & Company, did not affect the nature of the business—the sale of insurance securities; thus, the mergers changed only the corporate structure of the business operation. Similarly, there is no evidence or claim in this record that additional employment duties or obligations resulted from these mergers. Thus, *Rogers* supports the conclusion that Acordia of Ohio, L.L.C., is entitled to enforce the agreements it acquired in the merger that passed to it by operation of law.

**{¶ 32}** In addition to this court, other courts construing similar statutes have rejected the conclusion reached by the lead opinion. For example, in *Corporate Express Office Prods., Inc. v. Phillips*, the Supreme Court of Florida held that a surviving entity in a "merger assumes the right to enforce a noncompete agreement entered into with an employee of the merged corporation by operation of law, and no assignment is necessary * * * because in a merger, the

two corporations in essence unite into a single corporate existence." 847 So.2d 406, 414 (Fla.2003). And in *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, the Supreme Court of Nebraska reached the same result when it construed a Maryland statute, concluding that a surviving entity could enforce a noncompete agreement acquired in a merger because it was an asset that passed by operation of law, and no assignment was necessary. 275 Neb. 642, 650-652, 748 N.W.2d 626 (2008). *See also Natl. Instrument, L.L.C. v. Braithwaite*, Md.Cir.Ct. No. 24-C-06-004840, 2006 WL 2405831, *3 (June 5, 2006), (identifying cases in which courts construed merger statutes that vested in surviving entities the assets of a constituent entity without further act or deed, and which held that surviving entities could enforce noncompete agreements because they were business assets that passed by operation of law and not by assignment).

### Conclusion

**{¶ 33}** Pursuant to R.C. 1701.82 and 1705.39, the primary statutes governing mergers in Ohio, assets pass to a surviving entity by operation of law. It has been understood for more than a century that contracts are subordinate to statutes and that the latter also determine the effect of merger contracts and their mode of discharge. The agreements here automatically vested in Acordia of Ohio, L.L.C., without reversion or impairment, because they are assets that passed by operation of law, and Acordia of Ohio, L.L.C., can enforce the noncompete agreements as if it were a signatory to them.

**{¶ 34}** For these reasons, I would reverse the judgment of the court of appeals and hold that the surviving entity in a merger acquires the right to enforce a noncompete agreement entered into by a constituent entity by operation of law, and that neither assignment nor consent is necessary to effectuate that result.

LUNDBERG STRATTON and CUPP, JJ., concur in the foregoing dissenting opinion.

_____

**CUPP, J., dissenting.**

{¶ 35} I join Justice O'Donnell's dissent, which cogently explains why the noncompete agreements in this case transferred by operation of law to appellant, Acordia of Ohio, L.L.C., through the series of mergers. Therefore, I agree that the judgment of the court of appeals should be reversed.

{¶ 36} The determination that the agreements transferred by operation of law pursuant to the statute through the several mergers, however, does not definitively resolve the separate and distinct question whether the agreements are ultimately enforceable. The transfer by operation of law does not, in my view, foreclose appropriate relief to the parties to the noncompete agreement under traditional principles of law that regulate and govern noncompete agreements.

{¶ 37} During the progress of this case in the lower courts, it appears that there was insufficient appreciation of the legal distinction between the issue of transfer and the issue of the agreements' enforceability after transfer. As a result, there has been no specific and discrete inquiry thus far into the agreements' enforceability. Thus, if the transfer of the noncompete agreements by operation of law were appropriately recognized by our decision today, then this matter would properly be remanded for additional proceedings that could explore the enforceability of the agreements under the principles that govern such agreements.

{¶ 38} As the lead opinion explains, at ¶ 2, the noncompete agreements at issue in this case were signed between 1993 and 2000. The pertinent series of mergers and acquisitions started in 1994, when Frederick Rauh and Company, a single-office insurance agency in Cincinnati, was acquired by Acordia of Ohio, Inc. ("Acordia, Inc.") and concluded when Acordia, Inc., merged with Acordia of Ohio, L.L.C., effective late in 2001. When these employees resigned from Acordia of Ohio, L.L.C., in 2005, their employer had grown to have multiple offices, with 5,000 to 6,000 customers in the Cincinnati office alone. The

changes that occurred over the years and other factors in this record would seem to be relevant to the issue of the enforceability of these agreements.

{¶ 39} The proceedings on remand would likely encompass those matters normally focused on when noncompete agreements are challenged, such as whether the agreements are reasonable and whether the employees incurred additional obligations or duties as the mergers occurred so that the agreements should not be enforced on their original terms. *See, e.g., Lake Land Emp. Group of Akron, L.L.C. v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 9 (noncompete agreements are enforceable if they contain reasonable geographical and temporal restrictions); *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975), paragraphs one and two of the syllabus (a noncompete agreement that "imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests"; a noncompete agreement "is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public").

{¶ 40} Consequently, the issue of the enforceability of the noncompete agreements after the merger, an inquiry independent from the determination of their transfer by operation of law, remains to be explored.

{¶ 41} The judgment of the court of appeals should be reversed, and this cause should be remanded for further proceedings.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

Katz, Teller, Brant & Hild, James F. McCarthy III, and Laura Hinegardner, for appellant.

Denlinger, Rosenthal & Greenberg, L.P.A., Mark E. Lutz, and Michael P. Majba, for appellees.

Taft Stettinius & Hollister, L.L.P., W. Stuart Dornette, John B. Nalbandian, and Ryan M. Bednarczuk, urging reversal for amici curiae Ohio Chamber of Commerce and Ohio Chemistry Technology Council.

Beckman Weil Shepardson, L.L.C., and Peter L. Cassady, urging reversal for USI Holdings Corp. and USI Midwest, Inc.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., and Jennifer Turk, urging reversal for Willis of Ohio, Inc.

Hylant Group, Inc., and Michelle Lafferty, urging reversal for Hylant Group, Inc.

Jones Day, Robert P. Ducatman, and Meredith M. Wilkes, urging reversal for amicus curiae PNC Financial Services Group, Inc.

Fortney & Klingshirn and Neil Klingshirn; and Gregory Gordillo, urging affirmance for amicus curiae Ohio Employment Lawyers' Association.

_____