ENDRES FLORAL COMPANY, APPELLEE, v. ENDRES;
ENDRES ET AL., ADMRS., APPELLANTS.

ENDRES, APPELLEE, v. ENDRES; ENDRES ET AL., ADMRS., APPELLANTS.

[Cite as Endres Floral Co. v. Endres (1995), 72 Ohio St.3d 526.]

(No. 94–1307—Submitted April 25, 1995—Decided July 26, 1995.)

528

*Miller & Kyler Co., L.P.A., Thomas W. Hardin* and *J. Kevin Lundholm,* for appellee Endres Floral Company.

*Steven E. Hillman,* for appellee Louis P. Endres, Jr.

*Black, McCuskey, Souers & Arbaugh, Thomas W. Connors* and *Charles J. Tyburski,* for appellants.

———————

DOUGLAS, J. The court of appeals held, and appellees argue, that because the notice sent by the company to the shareholders informing them of the June 7, 1971 shareholders meeting did not specifically state that one of the purposes of the meeting was to consider the buy/sell agreement, the agreement was void and unenforceable. We disagree.

R.C. 1701.41(A) provides that: "Written notice stating the time, place, and *purposes* of a meeting of the shareholders shall be given * * *." (Emphasis added.) However, the requirement that the notice shall specify the precise purpose or purposes of the meeting can be waived by a shareholder. R.C. 1701.42 provides:

"Notice of the time, place, *and purposes of any meeting of shareholders* or directors, as the case may be, whether required by law, the articles, the regulations, or (in the case of directors) the bylaws, *may be waived* in writing, either before or after the holding of such meeting, by any shareholder, or by any director which writing shall be filed with or entered upon the records of the meeting. *The attendance of any shareholder or any director at any such meeting without protesting, prior to or at the commencement of the meeting, the lack of proper notice shall be deemed to be a waiver by him of notice of such meeting.*" (Emphasis added.)

R.C. 1701.42 is in direct response to R.C. 1701.41. Clearly, the plain meaning of R.C. 1701.42 is that the notice requirements with respect to time, place *and purposes* of a shareholder meeting, set forth in R.C. 1701.41(A), may be waived by a shareholder expressly or by acts constituting a waiver of notice. It is only logical that a shareholder who attends a shareholder meeting and remains silent regarding notice should be barred from denying that a violation of R.C.

1701.41(A) has occurred. See, generally, 5 Fletcher, Cyclopedia of the Law of Private Corporations (1987) 80–82, Section 2011. Accordingly, we find that the written notice requirement regarding the purpose or purposes of a meeting of shareholders, set forth in R.C. 1701.41(A), may be waived by a shareholder if the shareholder attends the meeting and the shareholder did not protest prior to or at the commencement of the meeting that notice was defective.

In the case at bar, Louis attended the June 7, 1971 shareholder meeting. Although he voted against the adoption of the agreement, Louis did not voice *any* protest of improper notice of the purposes of the June 7, 1971 meeting. Thus, pursuant to R.C. 1701.42, Louis cannot complain that notice was defective.

Additionally, Louis cannot claim that he was injured as a result of the omission. In fact, the record indicates that he actually benefited from the agreement. The company purchased shares owned by various shareholders on numerous occasions over several years and, as a result, Louis was able to increase his control, proportionately, in the company. Louis did not object to the purchase of these shares and, in fact, he played an instrumental part in the acquisition of the shares. Fair play dictates that Louis should not be able to utilize the agreement to his benefit and then claim that the agreement itself is void.

Moreover, Louis cannot claim that the outcome of the June 7, 1971 meeting would have been different if the shareholders had been informed of all the purposes of the meeting. In any event, the record reveals that the shareholders, including Louis, were aware prior to the June 7, 1971 meeting that the board was considering implementing a buy/sell agreement. At the June 7, 1971 meeting, all shareholders, with the exception of one individual, were present or were represented. The motion to adopt the agreement passed by a vote of 869.75 in favor, one hundred thirty-one against (Louis) and one hundred thirty-one abstaining. Even if the absent shareholder had been present and voted against the agreement, the agreement would have been properly adopted.

Further, appellee Endres Floral should not be allowed to use its own procedural omission to avoid its contractual obligation. After honoring the agreement for numerous years, the company cannot now hide behind an alleged technical violation of a statutory provision to invalidate the agreement. In other words, Endres Floral is estopped by its conduct to raise a technical violation and attempt to repudiate an agreement entered into on its behalf by its own board members.

Shareholder stock purchase plans/agreements are common among closely held corporations. See 6A Fletcher, *supra*, 486–488, Section 2858. They serve many useful purposes. In particular, these agreements are beneficial "because stock in closely held corporations has no readily discernable [*sic*] market value, as distinguished from stock in corporations listed on a recognized stock exchange." Fletcher, *supra*, at 487. It is obvious that Endres Floral and the shareholders

were aware of the benefits of the buy/sell agreement. Hence, we believe that the agreement is valid and enforceable in all material respects.[1]

Turning our attention to the buy/sell agreement, the disposition of stock owned by a shareholder could be triggered upon certain events including, among other things, the termination of a shareholder's employment with the company or the death of a shareholder. Pursuant to the terms of the agreement, the company had the option, but was not obligated, to purchase stock owned by a shareholder/employee who had been fired. However, if the company tendered an offer to purchase the shares owned by the employee, the employee was obligated to sell his or her shares to the company. Further, with respect to a deceased shareholder, the company did not have the option but was obligated to purchase the shares owned by a shareholder "at the date of his [or her] death." The agreement also set forth that the value of each share of stock was to be determined at the time of the signing of the agreement and "redetermined by the STOCKHOLDERS at the end of each fiscal year of the COMPANY." Additionally, the agreement provided that "[t]he purchase price for the shares of stock of a deceased STOCKHOLDER shall be the value last determined prior to the death of the STOCKHOLDER and endorsed on Schedule A."[2]

With respect to Eugene, the buy/sell agreement was triggered on two occasions. Eugene was fired on August 3, 1988, and he died on October 27, 1990. Shortly after Eugene was fired, the company demanded that Eugene sell his shares to the company. Pursuant to the terms of the agreement, Eugene was obligated to sell his stock. Further, the company became obligated to purchase the stock owned by Eugene at the time of his death. Hence, regardless of which triggering event comes into play, we find that appellants are obligated to sell and Endres Floral is obligated to purchase the stock at a value of $2,000 per share, which was the value last established by the shareholders on January 15, 1988.[3]

Accordingly, we reverse the judgment of the court of appeals. The cause is remanded to the trial court for purposes of computing the amount due appellants by appellee Endres Floral, which sum shall be determined by multiplying the number of shares held by Eugene at the time of his death by $2,000. Since Eugene, upon termination of his employment with the company, was obligated to sell his shares to the company, upon the company's demand in August 1988, and he failed so to do, no interest will be assessed up to and including the day of final

---

1. We are aware of the *findings* of the trial court. However, we believe the buy/sell agreement is valid and enforceable.

2. The "Schedule A" does not appear to have been attached to the buy/sell agreement.

3. At this meeting, the shareholders, including Eugene, voted in favor of setting the value of the company's stock at $2,000 per share.

judgment, which judgment the court is ordered to compute and enter. Costs of this appeal are assessed to the parties equally.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.