[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 526.]

ENDRES FLORAL COMPANY, APPELLEE, *v*. ENDRES; ENDRES ET AL., ADMRS., APPELLANTS.

ENDRES, APPELLEE, V. ENDRES; ENDRES ET AL., ADMRS., APPELLANTS.

[Cite as *Endres Floral Co. v. Endres*, 1995-Ohio-44.]

*Corporations—Written notice requirement regarding purpose of meeting of shareholders may be waived by a shareholder, when—R.C. 1701.42, construed and applied.*

———————————

The written notice requirement regarding the purpose or purposes of a meeting of shareholders, set forth in R.C. 1701.41(A), may be waived by a shareholder if the shareholder attends the meeting and the shareholder did not protest prior to or at the commencement of the meeting that notice was defective. (R.C. 1701.42, construed and applied.)

———————————

(No. 94-1307—Submitted April 25, 1995—Decided July 26, 1995.)

APPEAL from the Court of Appeals for Tuscarawas County, No. 93AP080056.

———————————

{¶ 1} This appeal involves an agreement entered into between appellee, Endres Floral Company ("Endres Floral" or "the company"), a closely held family corporation, and certain family members/shareholders of the company. The agreement, referred to as a "buy/sell agreement," was established for the purpose of providing for the disposition of shares of Endres Floral stock owned by a shareholder.

{¶ 2} The agreement was signed by all the shareholders except appellee, Louis P. Endres, Jr. ("Louis"). At all times relevant herein, Louis was a shareholder, officer, and a member of the board of directors of the company.

**{¶ 3}** It appears that the actual signing of the buy/sell agreement occurred sometime in 1971. However, the corporate minutes of the board meetings indicate that as early as October 13, 1970, the board considered implementing a program whereby a shareholder could sell his or her stock to the company. On February 10, 1971, a special meeting of the board was held for the purpose of discussing a "stock purchase program." During this meeting, representatives from the insurance industry presented to the board the benefits of such a program. The board decided to present this program to the shareholders. Thereafter, on February 17, 1971, a combined meeting of the board of directors and shareholders was held "for the purpose of presenting to the stockholders a stock purchase and selling agreement." At this meeting, an agreement was discussed and the matter "was tabled for further discussion."

**{¶ 4}** Subsequently, during the May 10, 1971 board meeting, the board noted that the annual shareholders meeting was scheduled for June 7, 1971. In this regard, the board requested the company attorney "to send out the necessary notifications and also to send out with it the agreement (Buy and Sell)." The notice provided, in part, that: "The annual meeting of the shareholders of The Endres Floral Comapny [*sic*] will be held * * * on the 7th day of June, 1971, * * * for the purposes of electing directors for the ensuing year, receiving and acting upon reports of officers and directors, and transacting such other business as may come before the meeting." Louis claims that a copy of the buy/sell agreement was not sent with the notice.

**{¶ 5}** On June 7, 1971, the shareholders voted to adopt the buy/sell agreement. Further, in accordance with the terms of the agreement, the shareholders set the value of a share of Endres Floral stock "for the ensuing year." Louis attended this meeting. Although he voted against the adoption of the agreement itself, Louis joined the other shareholders in setting the per share price of the stock.

{¶ 6} Following the June 7, 1971 meeting, the shareholders set the per share price on at least ten separate occasions. On all ten occurrences, Louis voted in favor of the newly established price. In fact, on many of the occasions, he either initiated or seconded the motion with respect to the approval of the price. In addition, on several occasions, Louis and the other directors, on behalf of the company, authorized the purchase of stock from various shareholders.

{¶ 7} On February 26, 1988, Eugene V. Endres ("Eugene") was replaced as president of Endres Floral. He was given the title of chairman of the board and was put in charge of public relations for the company. Thereafter, at a board meeting conducted on August 3, 1988, Eugene offered to sell the shares of stock he owned to the company for $7,352.95 per share. However, the remaining board members, who at the time consisted of Louis and Francis W. Endres, rejected this offer. Further, during this meeting, Eugene was given an ultimatum by Louis and Francis Endres to either retire voluntarily from the company or be fired. Eugene informed them that he would not retire.

{¶ 8} On February 21, 1989, Endres Floral filed a complaint for forcible entry and detainer against Eugene, seeking restitution of a residence occupied by Eugene and owned by the company. Eugene filed an answer and counterclaim. Subsequently, Endres Floral filed an additional complaint against Eugene. In this complaint, the company sought specific performance of the buy/sell agreement. Endres Floral claimed that Eugene was obligated to sell his shares to the company at a price of $2,000 per share, which was the value last established by the shareholders in 1988. Also, on February 20, 1990, Louis filed a complaint against Eugene, Endres Floral, and other shareholders of the company. Louis sought a declaration that the buy/sell agreement was void and unenforceable and, therefore, the company was not obligated to purchase any shares owned by Eugene. These three cases were consolidated by the trial court.

**{¶ 9}** Eugene died on October 27, 1990. Subsequently, appellants, Richard Endres and Carol Cenci, co-administrators of Eugene's estate, were substituted as parties.

**{¶ 10}** With respect to the three consolidated cases, certain matters, which stemmed from Eugene's counterclaim and are not at issue in this appeal, were tried before a jury. With regard to these matters, the jury found in favor of appellants and damages were awarded accordingly. The remaining issues concerning the company's claim for specific performance and Louis's action pertaining to the enforceability of the buy/sell agreement were tried to the court.

**{¶ 11}** On June 1, 1993, the trial court held that the buy/sell agreement was void and unenforceable. The trial court concluded, essentially, that shares of Endres Floral stock held by the shareholders were not redeemable by the company, that the implementation of the buy/sell agreement for purposes of purchasing shares owned by a shareholder did not comply with certain statutory provisions, and that the agreement had been improperly modified.

**{¶ 12}** The Court of Appeals for Tuscarawas County affirmed the judgment of the trial court.

**{¶ 13}** The cause is now before this court pursuant to allowance of a discretionary appeal.

———————

*Miller & Kyler Co.*, L.P.A., *Thomas W. Hardin* and *J. Kevin Lundholm,* for appellee Endres Floral Company. *Steven E. Hillman*, for appellee *Louis P. Endres, Jr. Black, McCuskey, Souers & Arbaugh, Thomas W. Connors* and *Charles J. Tyburski*, for appellants.

———————

**DOUGLAS, J.**

**{¶ 14}** The court of appeals held, and appellees argue, that because the notice sent by the company to the shareholders informing them of the June 7, 1971

shareholders meeting did not specifically state that one of the purposes of the meeting was to consider the buy/sell agreement, the agreement was void and unenforceable. We disagree.

{¶ 15} R.C. 1701.41(A) provides that: "Written notice stating the time, place, and *purposes* of a meeting of the shareholders shall be given * * *." (Emphasis added.) However, the requirement that the notice shall specify the precise purpose or purposes of the meeting can be waived by a shareholder. R.C. 1701.42 provides:

"Notice of the time, place, *and purposes of any meeting of shareholders* or directors, as the case may be, whether required by law, the articles, the regulations, or (in the case of directors) the bylaws, *may be waived* in writing, either before or after the holding of such meeting, by any shareholder, or by any director which writing shall be filed with or entered upon the records of the meeting. *The attendance of any shareholder or any director at any such meeting without protesting, prior to or at the commencement of the meeting, the lack of proper notice shall be deemed to be a waiver by him of notice of such meeting*." (Emphasis added.)

{¶ 16} R.C. 1701.42 is in direct response to R.C. 1701.41. Clearly, the plain meaning of R.C. 1701.42 is that the notice requirements with respect to time, place *and purposes* of a shareholder meeting, set forth in R.C. 1701.41(A), may be waived by a shareholder expressly or by acts constituting a waiver of notice. It is only logical that a shareholder who attends a shareholder meeting and remains silent regarding notice should be barred from denying that a violation of R.C. 1701.41(A) has occurred. See, generally, 5 Fletcher, Cyclopedia of the Law of Private Corporations (1987) 80-82, Section 2011. Accordingly, we find that the written notice requirement regarding the purpose or purposes of a meeting of shareholders, set forth in R.C. 1701.41(A), may be waived by a shareholder if the

shareholder attends the meeting and the shareholder did not protest prior to or at the commencement of the meeting that notice was defective.

{¶ 17} In the case at bar, Louis attended the June 7, 1971 shareholder meeting. Although he voted against the adoption of the agreement, Louis did not voice *any* protest of improper notice of the purposes of the June 7, 1971 meeting. Thus, pursuant to R.C. 1701.42, Louis cannot complain that notice was defective.

{¶ 18} Additionally, Louis cannot claim that he was injured as a result of the omission. In fact, the record indicates that he actually benefited from the agreement. The company purchased shares owned by various shareholders on numerous occasions over several years and, as a result, Louis was able to increase his control, proportionately, in the company. Louis did not object to the purchase of these shares and, in fact, he played an instrumental part in the acquisition of the shares. Fair play dictates that Louis should not be able to utilize the agreement to his benefit and then claim that the agreement itself is void.

{¶ 19} Moreover, Louis cannot claim that the outcome of the June 7, 1971 meeting would have been different if the shareholders had been informed of all the purposes of the meeting. In any event, the record reveals that the shareholders, including Louis, were aware prior to the June 7, 1971 meeting that the board was considering implementing a buy/sell agreement. At the June 7, 1971 meeting, all shareholders, with the exception of one individual, were present or were represented. The motion to adopt the agreement passed by a vote of 869.75 in favor, one hundred thirty-one against (Louis) and one hundred thirty-one abstaining. Even if the absent shareholder had been present and voted against the agreement, the agreement would have been properly adopted.

{¶ 20} Further, appellee Endres Floral should not be allowed to use its own procedural omission to avoid its contractual obligation. After honoring the agreement for numerous years, the company cannot now hide behind an alleged technical violation of a statutory provision to invalidate the agreement. In other

words, Endres Floral is estopped by its conduct to raise a technical violation and attempt to repudiate an agreement entered into on its behalf by its own board members.

{¶ 21} Shareholder stock purchase plans/agreements are common among closely held corporations. See 6A Fletcher, *supra*, 486-488, Section 2858. They serve many useful purposes. In particular, these agreements are beneficial "because stock in closely held corporations has no readily discernable [*sic*] market value, as distinguished from stock in corporations listed on a recognized stock exchange." Fletcher, *supra*, at 487. It is obvious that Endres Floral and the shareholders were aware of the benefits of the buy/sell agreement. Hence, we believe that the agreement is valid and enforceable in all material respects.[1]

{¶ 22} Turning our attention to the buy/sell agreement, the disposition of stock owned by a shareholder could be triggered upon certain events including, among other things, the termination of a shareholder's employment with the company or the death of a shareholder. Pursuant to the terms of the agreement, the company had the option, but was not obligated, to purchase stock owned by a shareholder/employee who had been fired. However, if the company tendered an offer to purchase the shares owned by the employee, the employee was obligated to sell his or her shares to the company. Further, with respect to a deceased shareholder, the company did not have the option but was obligated to purchase the shares owned by a shareholder "at the date of his [or her] death." The agreement also set forth that the value of each share of stock was to be determined at the time of the signing of the agreement and "redetermined by the STOCKHOLDERS at the end of each fiscal year of the COMPANY." Additionally, the agreement provided that "[t]he purchase price for the shares of stock of a deceased STOCKHOLDER

---

1. We are aware of the *findings* of the trial court. However, we believe the buy/sell agreement is valid and enforceable.

shall be the value last determined prior to the death of the STOCKHOLDER and endorsed on Schedule A."[2]

{¶ 23} With respect to Eugene, the buy/sell agreement was triggered on two occasions. Eugene was fired on August 3, 1988, and he died on October 27, 1990. Shortly after Eugene was fired, the company demanded that Eugene sell his shares to the company. Pursuant to the terms of the agreement, Eugene was obligated to sell his stock. Further, the company became obligated to purchase the stock owned by Eugene at the time of his death. Hence, regardless of which triggering event comes into play, we find that appellants are obligated to sell and Endres Floral is obligated to purchase the stock at a value of $2,000 per share, which was the value last established by the shareholders on January 15, 1988.[3]

{¶ 24} Accordingly, we reverse the judgment of the court of appeals. The cause is remanded to the trial court for purposes of computing the amount due appellants by appellee Endres Floral, which sum shall be determined by multiplying the number of shares held by Eugene at the time of his death by $2,000. Since Eugene, upon termination of his employment with the company, was obligated to sell his shares to the company, upon the company's demand in August 1988, and he failed so to do, no interest will be assessed up to and including the day of final judgment, which judgment the court is ordered to compute and enter. Costs of this appeal are assessed to the parties equally.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

---

2. The "Schedule A" does not appear to have been attached to the buy/sell agreement.

3. At this meeting, the shareholders, including Eugene, voted in favor of setting the value of the company's stock at $2,000 per share.

January Term, 1995

---