ASA ARCHITECTS, INC., APPELLEE AND CROSS-APPELLANT,
*v.* SCHLEGEL, APPELLANT AND CROSS-APPELLEE.

[Cite as *ASA Architects, Inc. v. Schlegel* (1996), 75 Ohio St.3d 666.]

(No. 95–321—Submitted April 16, 1996—Decided July 3, 1996.)

668

*Schottenstein, Zox & Dunn, Kevin R. McDermott* and *Edwin L. Skeens,* for appellee and cross-appellant.

*Vorys, Sater, Seymour & Pease, David S. Cupps* and *Philip A. Brown,* for appellant and cross-appellee.

Douglas, J. The sole issue before this court is whether ASA is obligated by virtue of the May 25, 1982 stock purchase agreement to purchase the two hundred twenty shares of stock owned by Schlegel. The 1982 agreement does not specify what would happen to the agreement in the event of the company's merger with another corporation. Moreover, a new stock purchase agreement was not executed by the parties following the merger.

The court of appeals, citing *Searl v. Cozad* (App.1935), 19 Ohio Law Abs. 275, held, and ASA agrees, that the continued viability of the 1982 stock purchase agreement hinged on the intent of the parties, and, in this regard, genuine issues of material fact precluded summary disposition of the case. Additionally, ASA, in its cross-appeal, further argues, alternatively, that any responsibility it may have

had to Schlegel under the 1982 agreement was discharged, as a matter of law, at the time of the merger. ASA asserts that the stock that was the basis for the agreement ceased to exist after the merger, thereby rendering performance of the agreement an impossibility. We disagree.

In *Searl, supra,* the defendant entered into an installment contract with the plaintiff and agreed to purchase all the shares of common stock owned by the plaintiff in a company. The defendant was the president/manager of the company. Following the execution of the contract, the defendant raised his own salary by $400 a month—the exact amount he agreed to pay the plaintiff each month pursuant to the installment contract. The defendant complied with the terms of the agreement for a few years and, after becoming the majority shareholder, he stopped making payments on installments that were due. Thereafter, the company was dissolved voluntarily by the parties, and the plaintiff sued the defendant to recover certain amounts owed. The trial court held that the plaintiff was entitled to $3,375, but that she could not recover any installment that became due after the company was dissolved. On appeal, the court of appeals modified the judgment of the trial court, finding that the plaintiff was entitled to an additional sum of $400.

In *Searl,* the defendant asserted that he should be excused from obligations owing under the installment contract because, as a result of the dissolution, the stock that was the subject matter of the contract no longer existed and that the contract therefore could not be performed. In considering the defendant's arguments, the court of appeals noted that "where such a situation is claimed, the question to be determined by the court is whether it was the intention of the parties that one of them should be absolutely bound." *Id.* at 277. The court of appeals noted further that in the absence of an express provision in a contract contemplating such a situation, the law implies "an intention that impossibility of performance, arising from the destruction of the thing which is the subject of the contract, should excuse the performance of the contract." *Id.* Notwithstanding these findings, the court of appeals then determined that the proper focus in the case was whether the destruction of the subject matter of the contract was the fault of the promisor. The court of appeals determined essentially that the defendant failed to prove that he was not responsible for the dissolution of the company and the ultimate termination of the subject matter of the contract.

Clearly, the court of appeals' and ASA's reliance on *Searl, supra,* is misplaced. There are numerous distinctions that exist between *Searl* and the case before this court. The most glaring contrast is the fact that *Searl* involved the voluntary dissolution of a corporation. In this case, we are confronted with an entirely different situation. Here, we are concerned with the effect of a merger. "It is settled law that a merger involves the absorption of one company by another, the

latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *Morris v. Investment Life Ins. Co.* (1971), 27 Ohio St.2d 26, 31, 56 O.O.2d 14, 17, 272 N.E.2d 105, 108. See, also, 15 Fletcher, Cyclopedia of the Law of Private Corporations (1990) 124, Section 7082. Hence, it would be incorrect to maintain that the reasoning in *Searl*, which involved an entirely different matter, can be applied to the case now before us.[4]

In Ohio, the initial step in the effectuation of a statutory merger is the approval of an agreement of merger by the directors of the constituent[5] corporation. R.C. 1701.78(D).[6] The agreement must, in certain situations, be adopted by the shareholders of both the constituent and surviving[7] corporations. *Id.* The vote of shareholders required to adopt an agreement of merger is set forth in R.C. 1701.78(F). Thereafter, a certificate of merger must be filed with the Secretary of State. R.C. 1701.81. R.C. 1701.82 sets forth what effect a merger or consolidation has on the constituent and surviving corporations. Specifically, R.C. 1701.82 provides, in part, that:

"(A) When a merger or consolidation becomes effective, all the following apply:

"(1) The separate existence of each constituent entity other than the surviving entity in a merger shall cease, except that whenever a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights in the surviving or new entity, the officers, general partners, or other authorized

---

4. Having determined that *Searl v. Cozad* (1935), 19 Ohio Law Abs. 275, is factually inapposite to this case, we need not consider whether the court of appeals in *Searl* set forth an accurate portrayal of the law as it stands today with respect to the effects of a voluntary dissolution of a corporation.

5. R.C. 1701.01(V) provides:

" 'Constituent corporation' means an existing corporation merging into or into which is being merged one or more other entities in a merger or an existing corporation being consolidated with one or more other entities into a new entity in a consolidation, whether any of the entities are domestic or foreign, and 'constituent entity' means any entity merging into or into which is being merged one or more other entities in a merger, or an existing entity being consolidated with one or more other entities into a new entity in a consolidation, whether any of the entities are domestic or foreign."

6. The relevant portions of R.C. Chapter 1701 referred to herein have not changed substantially since the date of the merger.

7. R.C. 1701.01(W) provides:

" 'Surviving corporation' means the constituent domestic or foreign corporation that is specified as the corporation into which one or more other constituent entities are to be or have been merged, and 'surviving entity' means the constituent domestic or foreign entity that is specified as the entity into which one or more other constituent entities are to be or have been merged."

In the case at bar, any reference to constituent corporation concerns the company that was absorbed and extinguished by virtue of the 1988 merger. ASA is, of course, the surviving company.

representatives of the respective constituent entities shall execute, acknowledge, and deliver such instruments and do such acts. * * *

" * * *

"(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, *and all obligations belonging to or due each constituent entity,* all of which are vested in the surviving or new entity without further act or deed. * * *

"(4) The surviving or new entity is liable *for all the obligations of each constituent entity,* including liability to dissenting shareholders. Any claim existing or any action or proceeding pending by or against any constituent entity may be prosecuted to judgment, with right of appeal, as if the merger or consolidation had not taken place, or the surviving or new entity may be substituted in its place.

"(5) All the rights of creditors of each constituent entity are preserved unimpaired, and all liens upon the property of any constituent entity are preserved unimpaired * * *." (Emphasis added.)

The parties contend that the merger in the case at bar was perfected in compliance with Ohio's statutory merger scheme. ASA, however, relying essentially on Delaware case law, suggests that the term "obligations," as used in R.C. 1701.82(A)(3) and (4), involves only those obligations of a constituent corporation that are "external" in nature, such as debts owed to third-party creditors, and not "internal" obligations that are agreed to between a constituent corporation and employees/shareholders of the company. Again, we disagree.

In this regard, we find ASA's argument somewhat puzzling. ASA does not dispute, and, in fact, agrees that the employment contract entered into between the constituent corporation and Schlegel was acquired by ASA in the course of the merger.[8] Obviously, if a stock purchase agreement is an "internal" obligation of a constituent corporation, as argued by ASA, then an employment contract

---

8. On September 23, 1993, the parties filed a "stipulation" with the trial court. Specifically, in paragraph thirty-one of the document, the parties agreed that "[s]ubsequent to the reorganization and merger, there were no changes requested or made with respect to:

"a. the obligor[s] on the mortgage loan made to the Old Corporation by State Savings Bank to finance a building the Old Corporation purchased;

"b. the obligee on notes receivable held by the Old Corporation in respect of loans or advances to employees or shareholders;

"c. the corporate party to employment agreements between the Old Corporation and Messrs. Acock and Schlegel; and

"d. the corporate beneficiary on the two life insurance policies which are Deposition Exhibits 26 and 27."

entered into between an employee and a company would necessarily fall within this same classification.

In any event, it is obvious that ASA is attempting to add language to R.C. 1701.82(A)(3) and (4) that simply does not exist. R.C. 1701.82(A)(3) and (4) do not delineate between the types of obligations owed by a constituent corporation and those obligations that are inherited as a matter of law by the surviving corporation. Hence, as the General Assembly has shown no intent to create a dichotomy between certain types of obligations that flow from a constituent corporation to the surviving company in a merger, this court will certainly not presume to create one. In our opinion, the General Assembly has made its policy perfectly clear with respect to the effects of a merger. The surviving corporation in a merger is responsible for *all obligations* of the constituent corporation. R.C. 1701.82(A)(3) and (4).

There is no question that a stock purchase agreement represents a valid contract which is entitled to enforcement in a court of law. See, generally, *Endres Floral Co. v. Endres* (1995), 72 Ohio St.3d 526, 651 N.E.2d 950. "In the case of a merger of one corporation into another, where one of the corporations ceases to exist and the other corporation continues in existence, the latter corporation is liable for the debts, *contracts* and torts of the former * * * and this liability is often imposed by statute." (Emphasis added.) 15 Fletcher, *supra,* at 226, Section 7121. Indeed, a mandatory stock purchase agreement can confer reciprocal obligations upon the parties to the contract.

Accordingly, we find that a surviving corporation in a merger is liable for all obligations of a constituent corporation. Therefore, a properly executed mandatory stock purchase agreement entered into between a closely held constituent corporation and shareholders of the company is binding upon the surviving corporation in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist.

In this case, the May 25, 1982 stock purchase agreement entered into between Schlegel and the constituent corporation created reciprocal obligations between the parties. Pursuant to the terms of the agreement, the constituent corporation promised to purchase Schlegel's shares and Schlegel promised to tender his shares of stock to the company upon certain triggering events. The agreement did not address what would happen in the case of a merger. Further, ASA, in conjunction with the merger, expressly assumed full responsibility for all obligations owed by the constituent corporation. Moreover, following the merger, the parties did not enter into a new stock purchase agreement. Thus, we find that as a result of the merger the contractual obligations of the constituent corporation, including the stock purchase agreement, flowed, by operation of law, to ASA.

For the foregoing reasons, we reverse the judgment of the court of appeals. ASA is obligated to purchase the shares of stock held by Schlegel.  The judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.