O’Donnell, J.,
dissenting.
{¶ 20} Respectfully, I dissent.
{¶ 21} A noncompete agreement existing between an employee and a constituent entity is an asset of that entity and, in a statutory merger, transfers by operation of law to the surviving entity and is enforceable by the surviving entity as if it were a signatory to the original agreement. As a result of a series of successive corporate mergers, Acordia of Ohio, L.L.C., acquired the noncompete *351 agreements at issue in this case by operation of law, along with the ability to enforce them without regard to assignment.
{¶ 22} Accordingly, I would reverse the judgment of the court of appeals.
The Lead Opinion
{¶ 23} In my view, the lead decision does not conform with state statutes governing corporate mergers, and it departs from century-old precedent holding that a successor entity steps into the shoes of an acquired entity and any predecessor entities, and thereby acquires the right to enforce agreements in its capacity as a successor entity.
{¶ 24} In this case, the lead opinion concludes that Acordia of Ohio, L.L.C., cannot enforce the noncompete agreements it acquired by merger as if it had stepped into the shoes of the original corporate entities. The lead opinion interprets the silence in these agreements regarding assignability or successor-ship as evidence that the parties intended the agreements to operate only between the employee and the corporate employer that was a party to the agreement, and not any successor entities. While acknowledging that these agreements transferred by operation of law pursuant to R.C. 1701.82, the lead opinion concludes that “the wording within those agreements” precludes Acordia of Ohio, L.L.C., from enforcing the agreements as if it were one of the original contracting parties. The lead opinion explains that the merger did not change the language of the agreements by expanding its scope to include surviving entities; thus, it concludes, Acordia of Ohio, L.L.C., can enforce the agreements only according to their terms, which enjoined each employee from competing for two years after his or her employment terminated with the specific corporate employer that was a party to the agreement. This analysis, I submit, is faulty.
A Noncompete Agreement Is an Asset that Passes by Operation of Law
{¶ 25} R.C. 1701.82(A)(3) states, “The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority * * * of each constituent entity, and * * * all obligations belonging to or due to each constituent entity” without reversion or impairment. R.C. 1705.39, which pertains to mergers between corporations or partnerships and limited-liability companies, confers the same vestments on the surviving entity.
{¶ 26} It is true that R.C. 1701.82(A)(1) states that a constituent entity ceases to exist as a separate business in a merger, but that statute also provides several exceptions to this general rule, including when “a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights” in a surviving entity. In those instances, “the existence of the constituent entities *352 and the authority of their respective officers, directors, general partners, or other authorized representatives is continued notwithstanding the merger or consolidation.” Id.; compare R.C. 1705.39(A)(1) (contains similar exceptions).
{¶ 27} R.C. 1701.82 and 1705.39, by their operation, vest all the assets and obligations of a constituent entity in the surviving entity without reversion or impairment. When we examined the effect of R.C. 1701.82 in the context of a stock purchase agreement entered into by a constituent entity, we held that a properly executed contract is binding on the surviving entity “in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist.” ASA Architects, Inc. v. Schlegel, 75 Ohio St.3d 666, 665 N.E.2d 1083 (1996), syllabus. In that case, the agreement made no provision for what would happen in the event of a merger, the surviving entity in the merger assumed full responsibility for all obligations of the constituent entity, and the parties did not enter into a new agreement following the merger. Id. at 673. Based on those factors, we determined that the contractual obligations of the constituent entity flowed, by operation of law, to the surviving entity. Id. These same considerations are present here and compel a similar conclusion.
{¶ 28} The lead opinion correctly concludes that contract principles dictate that agreements must be enforced according to them terms; however, it ignores the fact that the entity entitled to enforce those agreements is determined by statute. See R.C. 1701.82 and 1705.39.
{¶ 29} More than 180 years ago, we recognized that contracts are subordinate to statutes, and the latter “may regulate them, prescribe their form, their effect, and the mode of their discharge, and every contract is supposed to be made with reference to those laws.” Smith v. Parsons, 1 Ohio 236, 238-239 (1823). And almost 100 years ago, we construed railroad-consolidation statutes that contained language similar to that in R.C. 1701.82 and determined that in a merger, “the consolidated company merely steps into the shoes of the constituent companies.” Marfield v. Cincinnati, D. & T. Traction Co., 111 Ohio St. 139, 161-164, 144 N.E. 689 (1924). The determination of the lead opinion that the terms of the agreements preclude Acordia of Ohio, L.L.C., from their enforcement runs counter to our century-old precedent.
{¶ 30} We applied this analysis more recently, rejecting the argument that a change in corporate structure invalidated noncompete agreements originally entered into by the constituent entity. Rogers v. Runfola & Assocs., Inc., 57 Ohio St.3d 5, 7, 565 N.E.2d 540 (1991). There, the employees signed noncompete agreements while working for a sole proprietorship, which subsequently changed its business structure to that of a corporation, during their tenure of employment. Id. In determining that the noncompete agreements were valid and could be *353 enforced by the newly incorporated business, which had acquired all the assets and liabilities of the sole proprietorship, we were guided in our analysis by the fact that “[o]nly the legal structure of the business changed, not the business itself,” id., and that the change in corporate structure did not place additional burdens on the “duties or the daily operations” of the employees. Id. This is the same circumstance that we confront in this case.
{¶ 31} Here, Acordia of Ohio, L.L.C., acquired the noncompete agreements from Wells Fargo, which in turn had acquired them through a series of corporate mergers. Those mergers, which began with Frederick Rauh Company, did not affect the nature of the business — the sale of insurance securities; thus, the mergers changed only the corporate structure of the business operation. Similarly, there is no evidence or claim in this record that additional employment duties or obligations resulted from these mergers. Thus, Rogers supports the conclusion that Acordia of Ohio, L.L.C., is entitled to enforce the agreements it acquired in the merger that passed to it by operation of law.
{¶ 32} In addition to this court, other courts construing similar statutes have rejected the conclusion reached by the lead opinion. For example, in Corporate Express Office Prods., Inc. v. Phillips, the Supreme Court of Florida held that a surviving entity in a “merger assumes the right to enforce a noncompete agreement entered into with an employee of the merged corporation by operation of law, and no assignment is necessary * * * because in a merger, the two corporations in essence unite into a single corporate existence.” 847 So.2d 406, 414 (Fla.2003). And in Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc., the Supreme Court of Nebraska reached the same result when it construed a Maryland statute, concluding that a surviving entity could enforce a noncompete agreement acquired in a merger because it was an asset that passed by operation of law, and no assignment was necessary. 275 Neb. 642, 650-652, 748 N.W.2d 626 (2008). See also Natl. Instrument, L.L.C. v. Braithwaite, Md.Cir.Ct. No. 24-C-06-004840, 2006 WL 2405831, *3 (June 5, 2006), (identifying cases in which courts construed merger statutes that vested in surviving entities the assets of a constituent entity without further act or deed, and which held that surviving entities could enforce noncompete agreements because they were business assets that passed by operation of law and not by assignment).
Conclusion
{¶ 33} Pursuant to R.C. 1701.82 and 1705.39, the primary statutes governing mergers in Ohio, assets pass to a surviving entity by operation of law. It has been understood for more than a century that contracts are subordinate to statutes and that the latter also determine the effect of merger contracts and their mode of discharge. The agreements here automatically vested in Acordia of Ohio, L.L.C., without reversion or impairment, because they are assets that *354 passed by operation of law, and Acordia of Ohio, L.L.C., can enforce the noncompete agreements as if it were a signatory to them.
{¶ 34} For these reasons, I would reverse the judgment of the court of appeals and hold that the surviving entity in a merger acquires the right to enforce a noncompete agreement entered into by a constituent entity by operation of law, and that neither assignment nor consent is necessary to effectuate that result.
Lundberg Stratton and Cupp, JJ., concur in the foregoing dissenting opinion.