[Cite as *U.S. Bank, N.A. v. Bennett*, 2012-Ohio-2700.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| U.S. BANK, N.A., | ) | |
| | ) | |
| PLAINTIFF-APPELLANT. | ) | |
| | ) | |
| V. | ) | CASE NO. 11 MA 40 |
| | ) | |
| DEBRA BENNETT, ET AL., | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 09CV4383

JUDGMENT:                                    Reversed.  Judgment entered in favor of
appellant.

APPEARANCES:
For Plaintiff-Appellant                      Attorney Steven L. Sacks
120 East Fourth Street, Suite 800
Cincinnati, Ohio 45202

For Defendants-Appellees                     Attorney Patricia Dougan
Attorney Christina M. Janice
Community Legal Aid Services, Inc.
First National Bank Tower, 7th Floor
11 Central Square
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 12, 2012

DONOFRIO, J.

**{¶1}** Plaintiff-appellant U.S. Bank, N.A. appeals a decision of the Mahoning County Common Pleas Court awarding summary judgment in favor of defendant-appellee Debra L. Bennett. U.S. Bank sought to foreclose on a home purchased by Bennett. The trial court found that there was a defect in the "chain of title" relative to the note and mortgage, and concluded that U.S. Bank was not the holder of the note and mortgage.

## Facts & Procedural History

**{¶2}** U.S. Bank claims to be the successor holder of a note and mortgage once held by a company known as The Leader Mortgage Company or The Leader Mortgage Company, LLC. On July 1, 1998, The Leader Mortgage Company, a corporation, merged with First Federal Savings Acquisition Corp. and was the surviving entity. (T.d. 26, Exhibit A.) On December 31, 1998, The Leader Mortgage Company, the corporation, merged into The Leader Mortgage Company, LLC. (T.d. 26, Exhibit B.)

**{¶3}** Over four years later on June 30, 2003, Bennett borrowed $105,346.00 from the Residential Mortgage Company of Youngstown, Inc. secured by a mortgage on a house at 834 Edenridge Drive, Youngstown, Ohio. (T.d. 23, Exhibit A.) Edward B. Connors, signing as president of the Residential Mortgage Company of Youngstown, Inc., indorsed the note to The Leader Mortgage Company. (T.d. 23, Exhibit A, p. 2.) E. Brian Connors, Secretary/Treasurer of the Residential Mortgage Company of Youngstown, Inc. assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for the The Leader Mortgage Company. (T.d. 23, Exhibit C.)

**{¶4}** On June 1, 2004, The Leader Mortgage Company, LLC merged into U.S. Bank. (T.d. 23, Exhibit D.)

**{¶5}** On March 23, 2009, MERS assigned the mortgage to U.S. Bank. (T.d. 23, Exhibit C, pp. 2-3.)

**{¶6}** Bennett defaulted on the note and U.S. Bank filed its complaint in foreclosure against her on November 18, 2009. (T.d. 1.) Bennett answered alleging

that U.S. Bank was not the real party in interest because the note was not properly indorsed. (T.d.13.)

{¶7} On May 4, 2010, U.S. Bank filed a motion for summary judgment with an affidavit in support. (T.d. 22, 23.) The affidavit is that of U.S. Bank's assistant vice president. In it, she states that U.S. Bank is the holder of the note and mortgage. She also states that Bennett defaulted under the terms of the note and mortgage, and the account is due for the April 1, 2008 payment and all subsequent payments. As of March 29, 2010, a principal balance of $97,523.05 was due on the account, with interest thereon from March 1, 2008, at 5.250 percent per annum. There is an acceleration provision in both the note and mortgage, allowing the lender to call the entire unpaid principal balance with interest immediately due and payable.

{¶8} Bennett responded in opposition and subsequently filed her own motion for summary judgment on June 11, 2010. (T.d. 27.) Bennett argued that the indorsement was invalid because the note was indorsed to The Leader Mortgage Company, not The Leader Mortgage Company, LLC. Bennett argued that since The Leader Mortgage Company was no longer in existence when the note was indorsed, it was indorsed to a nonexistent entity.

{¶9} On September 20, 2010 a magistrate denied U.S. Bank's motion for summary judgment, but granted Bennett's. (T.d. 30.) Applying only Ohio corporate law, the magistrate concluded that The Leader Mortgage Company did not exist at the time of indorsement rendering the indorsement defective and creating a defect in the "chain of title."

{¶10} U.S. Bank filed objections to the magistrate's decision and Bennett responded. (T.d. 35, 38.) On February 10, 2011, the trial court adopted the magistrate's decision as its own. (T.d. 39.) This appeal followed. (T.d. 40.)

### Summary Judgment

{¶11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶24. Summary judgment is properly

granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1976); Civ.R. 56(C).

**{¶12}** "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

**{¶13}** The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶14}** "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

**{¶15}** Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶16}** The claim being litigated here is foreclosure. A party seeking to foreclose on a mortgage must establish: (1) execution and delivery of the note and mortgage; (2) valid recording of the mortgage; (3) it is the current holder of the note and mortgage; (4) default; and (5) the amount owed. *Countrywide Home Loans, Inc. v. Baker*, 10th Dist. No. 09AP-968, 2010-Ohio-1329, ¶8. The central issue of this case concerns the third element – U.S. Bank's status as holder of the note and mortgage.

### *Applicable Law*

**{¶17}** Resolution of this case first hinges largely on what law applies. The arguments presented in the parties' briefs can essentially be distilled down to two competing choices of law – corporate law or the law governing negotiable instruments, Article 3 of the Uniform Commercial Code (UCC) (as adopted by Ohio in R.C. 1301 et seq.).

**{¶18}** Under corporate law, a dissolved corporation "shall cease to carry on business and shall do only such acts as are required to wind up its affairs." R.C. 1701.88(A). When, as here, one company merges with another, "the latter retain[s] its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St.3d 666, 671, 665 N.E.2d 1083 (1996). These are well-accepted principles of corporate law.

**{¶19}** However, the principle issue in this case revolves around whether U.S. Bank is a holder of the note in question. First and foremost, a note secured by a mortgage is widely considered to be a negotiable instrument. *Bank One, N.A. v. Demmler*, 5th Dist. No. 08CAE100057, 2009-Ohio-3848. As such, Ohio's Uniform

Commercial Code covering commercial transactions and negotiable instruments governs as adopted by Ohio's R.C. 1301 et seq. *See Natl. City Mtge. v. Piccirilli*, 7th Dist. No. 08 MA 230, 2011-Ohio-4312; *U.S. Bank Natl. Ass.*, 7th Dist. No. 08 JE 2, 2009-Ohio-1179. Consequently, Ohio's Uniform Commercial Code as adopted in R.C. 1301 et seq. applies to the enforcement of the note in question here.[1]

{¶20} Additionally, R.C. 1301.02 sets forth the purposes and rules of construction applicable to code sections covering commercial transactions and negotiable instruments:

(A) Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code shall be liberally construed and applied to promote their underlying purposes and policies.

(B) Underlying purposes and policies of those chapters are the following:

(1) To simplify, clarify, and modernize the law governing commercial transactions;

(2) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties;

(3) To make uniform the law among the various jurisdictions.

### Indorsement Intent

{¶21} U.S. Bank raises four assignments of error. It addresses its first two assignments of error together. They state, respectively:

The Trial Court erred in holding that U.S. Bank, N.A. is not the

---

1. R.C. 1301 et seq. was repealed by Am.H.B. No. 9, 2011 Ohio Laws File 9, effective June 29, 2011. The act adopted the revisions to the general provisions of the Uniform Commercial Code (UCC) that were recommended by the National Conference of Commissioners on Uniform State Laws (NCCUSL) and made related changes in the UCC and the Revised Code. The act, to the extent possible, made the language in R.C. Chapter 1301 identical to the language recommended by the NCCUSL and renumbered the sections to correspond with the sections as they are numbered by the UCC. For example, R.C. 1301.01 was renumbered so that it now appears at R.C. 1301.201. As R.C. 1301.201 only applies to transactions entered on or after June 29, 2011, R.C. 1301.01 applies to this appeal.

holder of the Note in this case.

The Trial Court erred in holding that the Note contains a fatal flaw on the chain of title of the Note.

**{¶22}** Because of what it perceived as a defect in the "chain of title," the trial court found that U.S. Bank was not a holder of the note and mortgage. U.S. Bank argues that it is a holder, citing the UCC as adopted by the Ohio Revised Code 1301 et seq. R.C. 1301.01(T)[2] defines a holder as follows:

"Holder" with respect to a negotiable instrument means either of the following:

(a) If the instrument is payable to bearer, a person who is in possession of the instrument;

(b) If the instrument is payable to an identified person, the identified person when in possession of the instrument.

**{¶23}** The inquiry into whether U.S. Bank is a holder of the note in question begins with an examination of an indorsement that appears at the end of the note made to U.S. Bank's predecessor, The Leader Mortgage Company. The indorsement appears as follows:

Pay to the order of THE LEADER MORTGAGE COMPANY without recourse. RESIDENTIAL MORTGAGE COMPANY OF YOUNGSTOWN, INC. [signature of Edward B. Connors] Edward B. Connors, President

(T.d. 23, Exhibit A, p. 2.)

**{¶24}** It is undisputed that, at the very least, the Residential Mortgage Company of Youngstown, Inc. *attempted* to specially indorse the note to The Leader

---

2. The current definition of a holder now found in R.C. 1301.201(B)(21)(a) is substantially similar to the R.C. 1301.01(T)(1)(a) and (b) definition of "holder."

Mortgage Company. R.C. 1303.25(A) defines a special indorsement as follows:

A "special indorsement" means an indorsement that is made by the holder of an instrument, whether payable to an identified person or payable to the bearer, and that identifies a person to whom it makes the instrument payable. An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person. Section 1303.08 of the Revised Code applies to special indorsements.

**{¶25}** Section two of the note, entitled "BORROWER'S PROMISE TO PAY; INTEREST," states:

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Five Thousand Three Hundred Forty Six Dollars and Zero Cents (U.S. $105,346.00) plus interest, to the order of Lender.

(T.d. 23, Exhibit A, p. 2.)

**{¶26}** The note identifies the "Borrower" as Bennett and the "Lender" as the Residential Mortgage Company of Youngstown, Inc. Therefore, the Residential Mortgage Company of Youngstown, Inc. was the initial holder of the note because the note was payable to it as an identified person.[3]

**{¶27}** Turning to the indorsement at the end of the note, it shows that it was indorsed to a specific person. The question is whether that person was The Leader Mortgage Company, a nonexistent former corporation, or The Leader Mortgage Company, LLC. an organization that then existed as a limited liability company.[4] In

---

3. A corporation is considered a person. R.C. 1.59(C) and 1701.01(G). *Compare* R.C. 1701.13(A) (providing that a corporation may sue and be sued).
4. A limited liability company is also considered a person. See *Dexxon Digital Storage, Inc. v. Haenszel* 161 Ohio App.3d 747, 2005-Ohio-3187, 832 N.E.2d 62.

other words, the question is whether the indorsement is an indorsement to a specific *identifiable* person.

**{¶28}** U.S. Bank argues that if The Leader Mortgage Company was nonexistent, as Bennett argues and the magistrate concluded, then the indorsement defaults to a blank indorsement. However, U.S. Bank offers no case law or statutory law in support of this proposition. A blank indorsement is defined as:

> an indorsement that is made by the holder of the instrument and that is not a special indorsement. When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed. R.C. 1303.25(B).

**{¶29}** Here, the indorsement is made out to an identified person, The Leader Mortgage Company, making it a special indorsement, not a blank indorsement. R.C. 1303.25(A) (special indorsement). Whether that identified person was a nonexistent former corporation or a limited liability company bearing the same name is immaterial to the indorsement's status as a special indorsement. Case law is scant, but it has been recognized that where a check had been made "payable to a nonexisting corporation and the drawer does not know that the corporation is nonexistent, the check is not payable to bearer." *Jorgensen Chevrolet Co. v. First Nat. Bank of Red Wing, Minn.*, 217 Minn. 413, 419, 14 N.W.2d 618 (1944).

**{¶30}** U.S. Bank argues in the alternative that if the indorsement maintains its status as a special indorsement, then the inquiry shifts to intent, citing R.C. 1303.08. R.C. 1303.08 addresses identification of a person to whom an instrument is payable. R.C. 1303.08(A) looks to the intent of the person who issued the instrument:

> (A) The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized to sign the instrument, who signs the instrument as, in the name of, or in behalf of the issuer of the instrument.

**{¶31}** R.C. 1303.08(B) looks to the intent of the person who supplied the payee's identity:

(B) If the signature of the issuer of an instrument is made by a check-writing machine or other automated means, the payee of the instrument is determined by the intent of the person who supplied the name or identification of the payee, whether or not authorized to do so.

**{¶32}** Under subsection (B), U.S. Bank contends that the "indorsement clearly shows that the indorsement was made by a check writing machine, or some automated means." (U.S. Bank's Brief, p. 14.) However, U.S. Bank did not offer any evidence in support of its motion for summary judgment that the indorsement was made by a check writing machine or some other automated means. Nor can it be inferred from the face of the note since only a photocopy of the note was provided and not the original.

**{¶33}** Returning to subsection (A), Edward B. Connors is the one who signed the indorsement. And he signed it as president and on behalf of the issuer, the Residential Mortgage Company of Youngstown, Inc. He made the note payable to The Leader Mortgage Company. Contrary to U.S. Bank's argument that Connors' intent is clear, Bennett maintains there was no evidence before the trial court to establish that he intended to indorse the note to The Leader Mortgage Company, LLC rather than The Leader Mortgage Company, the nonexistent former corporation. Indeed, the summary judgment evidence does not contain a direct statement of Connors' intent in this regard. However, as R.C. 1301.02(A) suggests, R.C. 1303.08(A)'s provision addressing the signer's intent should be liberally construed. It has been observed that the signer's intent can be inferred from the face of the note itself and the surrounding facts and circumstances. *The Commercial & Sav. Bank Co. v. Manning*, 5th Dist. No. 83-CA-3, 1983 WL 7018 at *2 (Aug. 15, 1983).

**{¶34}** Here, the note was signed on June 30, 2003 when The Leader Mortgage Company existed only as a LLC. The note and the indorsement to The

Leader Mortgage Company at the end of the note appear to be contemporaneously executed, implying that The Leader Mortgage Company, LLC as it then existed was the intended payee, not the corporation that ceased to exist over four years *prior* to execution of the note.  It would seem illogical that the Residential Mortgage Company of Youngstown, Inc. would be conducting business with and indorse a note (secured by a mortgage) to a nonexistent corporation.

**{¶35}** Bennett's and the trial court's view of the indorsement is a hypertechnical one inconsistent with the underlying purposes and policies of the UCC.  Requiring in this case the insertion of "LLC" after a company's name to ensure proper negotiation or transfer of an instrument would run counter to the purpose of the UCC to simplify, clarify, and modernize this area of the law governing commercial transactions and would serve only to stifle continued expansion of commercial practices through custom, usage, and agreement of the parties by requiring such magical language or strict compliance.

### *Mistake*

**{¶36}** In the Revised Code section defining indorsement there is a subsection addressing the situation where the payee's name is misspelled:

> (D) If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signatures in both names may be required by a person paying or taking the instrument for value or collection. R.C. 1303.24(D).

**{¶37}** The Official Comment to R.C. 1303.24 offers a helpful explanation of the purpose and role of subsection (D):

> 3. Subsection (d) is a restatement of former Section 3-203. Section 3-110(a) states that an instrument is payable to the person intended by the person signing as or in the name or behalf of the issuer

even if that person is identified by a name that is not the true name of the person. In some cases the name used in the instrument is a misspelling of the correct name and in some cases the two names may be entirely different. The payee may indorse in the name used in the instrument, in the payee's correct name, or in both. In each case the indorsement is effective. But because an indorsement in a name different from that used in the instrument may raise a question about its validity and an indorsement in a name that is not the correct name of the payee may raise a problem of identifying the indorser, the accepted commercial practice is to indorse in both names. Subsection (d) allows a person paying or taking the instrument for value or collection to require indorsement in both names.

**{¶38}** Under this provision, U.S. Bank argues that it would only need to sign for The Leader Mortgage Company and for itself as indorser. U.S. Bank offers an example of where someone wanting to give to the Salvation Army identifies "Salvation Army" as the payee in the check rather than "The Salvation Army," its corporate name. U.S. Bank contends that in that situation the check would not be considered void.

**{¶39}** In response, Bennett argues that the provision is meant more for a situation such as where a woman marries and takes her husband's surname and later receives a check bearing her maiden name. Under R.C. 1303.24(D), Bennett maintains that the woman could negotiate the check by simply signing her maiden name and her married name since she is one identifiable person. However, in this case, Bennett argues that The Leader Mortgage Company and The Leader Mortgage Company, LLC are different organizational entities – one a corporation formed pursuant to R.C. 1701.05 and the other a limited liability company organized pursuant to R.C. 1705.05 – despite the fact that The Leader Mortgage Company, the corporation, ceased to exist when it merged with The Leader Mortgage Company, LCC on December 31, 1998. (T.d., 26, Exhibit B.)

**{¶40}** The earlier discussion concerning R.C. 1303.08(A) and the signer's intent is equally relevant here as well. Applying R.C. 1303.24(D) as the Official Comment suggests, a reasonable view of the evidence demonstrates that Connors intended the indorsement to be payable to The Leader Mortgage Company, LLC even though he mistakenly omitted the LLC designation.

**{¶41}** Accordingly, U.S. Bank's first and second assignments of error have merit.

### *Nonholder Entitled to Enforce*

**{¶42}** U.S. Bank's third assignment of error states:

> The Trial Court erred in holding that U.S. Bank, N.A. was not entitled to enforce the note.

**{¶43}** Assuming arguendo that it is not the holder of the note, U.S. Bank argues under this assignment of error that it is still entitled to enforce the note under R.C. 1303.31(A)(2) (a nonholder in possession of the instrument who has the rights of a holder). Our disposition of U.S. Bank's first and second assignments of error renders its third assignment of error moot. App.R. 12(A)(1)(c).

### *Corporate Law*

**{¶44}** U.S. Bank's fourth assignment of error states:

> The Trial Court erred in granting Defendant-Appellee Bennett's Motion for Summary Judgment.

**{¶45}** Under this assignment of error, U.S. Bank argues that transfers to an extinct company should follow to the surviving entity post-merger. U.S. Bank cites well-accepted Ohio corporate case law and statutory law that says the surviving entity acquires all of the assets and liabilities of the former entity. However, as indicated early on, under Ohio corporate law, a dissolved corporation "shall cease to carry on business and shall do only such acts as are required to wind up its affairs." R.C. 1701.88(A). When, as here, one company merges with another, "[o]f necessity,

the absorbed company ceases to exist as a separate business entity." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St.3d 666, 671, 665 N.E.2d 1083 (1996). While it is true that the "latter [entity] retain[s] its own name and identity, and acquir[es] the assets, liabilities, franchises and powers of the former," the transfer of the note and mortgage to The Leader Mortgage Company cannot be characterized as falling within the acts required for winding up it affairs as a corporation. Rather, it suggests that the company is still actively engaged in the business for which it was created.

{¶46} Accordingly, U.S. Bank's fourth assignment of error is without merit.

{¶47} Based on this Court's resolution of U.S. Bank's first and second assignments of error, the judgment of the trial court is hereby reversed and judgment entered in favor of appellant, U.S. Bank.

Waite, P.J., concurs.

DeGenaro, J., concurs.